### UNITED STATES of America, Plaintiff-Appellee,

v.

### Gillam KERLEY, Defendant-Appellant.

### Nos. 87–1882, 87–2644.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1987.

Decided Jan. 28, 1988.

Supplemental Opinion of March 23, 1988.

As Amended April 5, 1988.

---

**934**

Peter Goldberger, Philadelphia, Pa., for defendant-appellant.

John T. Bannon, Jr., General Litigation and Legal Advice, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before POSNER, EASTERBROOK, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

A jury convicted Gillam Kerley of having "refuse[d] registration ... in the armed forces," 50 U.S.C.App. § 462(a), and Judge Shabaz sentenced him to three years in prison and imposed a fine of $10,000. Having been born in 1961, Kerley was required to register during the eight-day period preceding August 3, 1980. In a series of letters to the Director and the General Counsel of the Selective Service System in 1981 and 1982, Kerley said he had decided not to register. "I have not registered with Selective Service.... To have registered for the draft in July 1980 would have been lending my tacit approval to those very dangerous trends in our nation.... It was, and is, my duty to disobey. I am proud to be among the ... men who refused to register." On the basis of these letters, the Selective Service System searched its files for evidence that Kerley had registered, and found none. FBI agents then met with Kerley and gave him a blank registration card and mailing envelope together with a letter informing Kerley of "his obligation to register." Kerley gave the agents a statement which accused the government of pursuing a policy of "illegal selective prosecution" (a charge we rejected in *United States v. Kerley*, 787 F.2d 1147 (7th Cir.1986)) and said he was "honored" to have been "singled out" for prosecution and was "not intimidated." A month later Selective Service searched its files again, to see whether despite his brave words Kerley had reg-

istered. They found nothing, and in November 1982 a grand jury indicted him for having refused to register between August 3, 1980, and July 30, 1982.

■ Kerley's first argument is that the district court erred in instructing the jury that failure to register with Selective Service is a continuing offense. The provision of the Selective Service Act that creates the duty to register, 50 U.S.C.App. § 453, requires male citizens between the ages of 18 and 26 to present themselves for and submit to registration "at such time or times" as shall be determined by Presidential proclamation; for Kerley that meant the eight-day period that ended on August 3, 1980. He argues that once the period passed, he had no further duty to register; hence the jury's consideration should have been confined to the eight-day period, a period in which, as we shall see, he conceivably may not have had the willfulness required by 50 U.S.C.App. § 462(a).

This argument might have been compelling under the regime of *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), which held that, at least for purposes of the statute of limitations, failure to register is not a continuing offense. Congress quickly overruled *Toussie*, however, by enacting 50 U.S.C.App. § 462(d), which provides that no person shall be prosecuted for failure to register "unless the indictment is found within five years next after the last day before such person attains the age of twenty-six, or within five years next after the last day before such person does perform his duty *to register, whichever shall first occur.*" The statute implies a continuing duty to register. Cf. *United States v. McGoff*, 831 F.2d 1071, 1099 (D.C. Cir.1987) (dissenting opinion). Its evident purpose is to induce persons who have failed to register when they should have done so to register late, for by doing so they gain the benefit of a shorter statute of limitations. Under this interpretation, a Kerley who never registers may be prosecuted until he is 31; a Kerley who registers at 20 can be prosecuted only until he is 25. If the "duty to register" began and ended when Kerley was first required to register at age 18, he would have had no inducement to register late rather than never, for one cannot perform a duty after the duty has lapsed. The duty must therefore continue until he reaches 26.

■ So construed, the statute does not violate the self-incrimination clause of the Fifth Amendment, cf. *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 856–58, 104 S.Ct. 3348, 3357–58, 82 L.Ed.2d 632 (1984), for it does not compel anyone to register late and by doing so reveal his earlier violation; it merely gives someone who does register late the benefit of a shorter statute of limitations. Although it would be better if Congress had stated more plainly that the duty to register is a continuing one, Kerley does not argue that the statute is unconstitutionally vague. We therefore agree with the Eighth Circuit that the duty to register is indeed a continuing one. See *United States v. Eklund*, 733 F.2d 1287 (8th Cir.1984) (en banc).

The next question is whether the instructions were fatally flawed in eliminating an element of the offense from the jury's consideration. The jury was told, among other things:

> Two essential elements are required to be proven in order to establish the offense charged in the indictment: First, that the defendant at the time charged in the indictment had a legal duty to register with Selective Service; and second, that the defendant knowingly failed, evaded, or refused to register.

> When the word knowingly is used in these instructions it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

Kerley argues that these instructions allowed the jury to convict him for failing to register even if he didn't know he had a duty to register.

■ To upset his conviction on this basis Kerley must show not only that (1) the statute implicitly requires that the nonregistrant knew he had a duty to register and (2) the instructions failed to place this issue before the jury, but also that (3) the failure was plain error. For proper objection to the instruction was not made, Fed.R. Crim.P. 30; and while it is true both that Kerley objected to the quoted instruction at the charging conference and that he was not required to repeat his objection after the instruction was given, see *United*

*States v. Hollinger*, 553 F.2d 535, 543 (7th Cir.1977), simply objecting was not enough. Rule 30 requires that the "grounds of the objection" be stated—a requirement taken seriously in this circuit, see *United States v. Kehm*, 799 F.2d 354, 362–63 (7th Cir. 1986); *United States v. Kuecker*, 740 F.2d 496, 503 (7th Cir.1984). Kerley failed to state any ground for the objection. Although he is not a lawyer and was not represented, and allowances are sometimes made for the plight of the unrepresented litigant, see, e.g., *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir.1982), so basic a provision of the Federal Rules of Criminal Procedure as the requirement that the litigant state the grounds for his objection to an instruction is not waived for unrepresented defendants. *United States v. Redfield*, 197 F.Supp. 559, 589–90 (D.Nev.), aff'd per curiam, 295 F.2d 249 (9th Cir. 1961); 5 Orfield's Criminal Procedure Under the Federal Rules § 30:39, at p. 57 (2d ed.1987); cf. *Faretta v. California*, 422 U.S. 806, 835–36, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). And it is not satisfied by the defendant's offering his own instruction. The district judge may have thought that the substance of Kerley's proposed instruction was contained in the judge's instructions; it was incumbent on Kerley to point out the judge's error. See, e.g., *United States v. Kehm, supra*, 799 F.2d at 363; *United States v. Markowski*, 772 F.2d 358, 362–63 (7th Cir.1985). Kerley must therefore show that the error (if any) in the instructions was plain error.

■ The first step on this road is no problem. We have no doubt that the statute should be interpreted to require that the defendant had knowledge of the duty to register. See, e.g., *United States v. Klotz*, 500 F.2d 580 (8th Cir.1974) (per curiam); *United States v. Rabb*, 394 F.2d 230 (3d Cir.1968); *United States v. Boucher*, 509 F.2d 991 (8th Cir.1975); cf. *Wayte v. United States*, 470 U.S. 598, 612–13 and n. 13, 105 S.Ct. 1524, 1533 and n. 13, 84 L.Ed.2d 547 (1985); *United States v. Borkenhagen*, 468 F.2d 43, 50 (7th Cir.1972). It surely was not Congress's intention to impose criminal liability on eighteen-year-olds who do not register because they don't know they have to, maybe because they have a medical condition that, because it would disable them from military service, they incorrectly assume (cf. 50 U.S.C.App. § 453 and *United States v. Shunk*, 438 F.2d 1204 (9th Cir.1971) (per curiam)) excuses them from having to register.

A harder question is whether the instructions withdrew the issue of knowledge of legal duty from the jury. In *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), the Supreme Court, reversing this court, held that the crime of food-stamp fraud requires not only proof of unauthorized use of food stamps but proof that the user knew that his use was unauthorized. The Court assumed that the definition of "knowingly" in the instructions—the identical definition as in the present case—referred to the defendant's knowledge that he was using food stamps (equivalent to Kerley's undoubted knowledge that he was not registering for the draft) rather than to knowledge that the use was unauthorized. See *id.* at 422, 105 S.Ct. at 2086. But neither in this court nor in the Supreme Court had the government argued that the instructions placed the issue of guilty knowledge before the jury; it was defending a construction of the statute that if upheld would have made the issue irrelevant.

■ Nonetheless we believe that the instructions in the present case failed to place the issue of guilty knowledge adequately before the jury. Here as in *Liparota* the definition of "knowingly" was taken from a pattern instruction intended for cases where willfulness is not an element of the crime. See Federal Criminal Jury Instructions of the Seventh Circuit 86–87 (1980) (instruction 6.04 and committee comment). The jury may well have thought that the only "ignorance, mistake, or accident" relevant to deciding whether Kerley had acted knowingly was the kind that occurs when, for example, the letter of registration is misaddressed by the registrant or lost by the post office. (This may have the type of knowledge referred to in *Wayte v. United States, supra*, 470 U.S. at 613 n. 13, 105 S.Ct. at 1533 n. 13; the opinion is unclear—which is some indication of the potential for confusing knowing what one has done with knowing that what one has done is illegal.) These are examples of mistakes made by persons who know they have a legal duty to register; the jury may not have realized that a mistaken belief that there is no duty to register is also a defense. Or may have: the jury may have thought that the "ignorance" of which the instructions spoke was ignorance of the existence of a legal duty, as well as ignorance of a fact such as the address of the registration office. But the

jury was not pointed in that direction, and an instruction is not adequate merely because it does not foreclose a meritorious defense. Cf. *Sandstrom v. Montana,* 442 U.S. 510, 526, 99 S.Ct. 2450, 2460, 61 L.Ed.2d 39 (1979). Read naturally, the instruction merely told the jury that it could not convict Kerley if he didn't know what he was doing.

■ So there was error—but was it plain? A plain error is not just one that is conspicuous but one whose correction is necessary to prevent a "miscarriage of justice," *United States v. Young,* 470 U.S. 1, 15 and n. 12, 105 S.Ct. 1038, 1046 and n. 12, 84 L.Ed.2d 1 (1985), and therefore "it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court," *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (footnote omitted). With a qualification to be noted shortly, there is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even if the error had never been committed; hence "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *United States v. Douglas,* 818 F.2d 1317, 1320 (7th Cir.1987); see also *United States v. Markowski,* 772 F.2d 358, 363 (7th Cir. 1985); *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984). No reasonable jury could have concluded that Kerley did not know he had a legal duty to register. Any doubts he may initially have had because a federal district court in another circuit had held the registration statute unconstitutional as discriminating against men—and Kerley never in his correspondence with the Selective Service System, or in any other forum so far as we can tell, expressed any doubt that the statute was constitutional and also was applicable to him—had to have been stilled when FBI agents, well within the period covered by the indictment, gave him a letter telling him he had to register. By then the Supreme Court had upheld the constitutionality of the registration statute, see *Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), so we need not decide whether a sincere and not wholly groundless belief in the unconstitutionality of a statute can make a deliberate refusal to comply with its requirements nonwillful. See *United States v. Boardman,* 419 F.2d 110, 114–16 (1st Cir.1969).

■ Yet a judge in a criminal case may not direct a verdict for the government just because no reasonable jury would acquit. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977); *United Brotherhood of Carpenters & Joiners v. United States,* 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973 (1947). This is true even though such an error might seem the quintessence of harmlessness. By definition, the error is not one that might have changed the outcome, provided the jury was rational—which reviewing courts, in deciding whether errors are harmless, assume juries to be. See, e.g., *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986); *Schneble v. Florida,* 405 U.S. 427, 431–32, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972); *United States v. Lewis,* 671 F.2d 1025, 1028 (7th Cir.1982); *United States v. Shepherd,* 576 F.2d 719, 724 (7th Cir.1978). Nevertheless, not only does the harmless-error doctrine not apply when the error consists in directing a verdict against a criminal defendant, *Rose v. Clark, supra,* 106 S.Ct. at 3106; it also does not apply when the judge directs a partial verdict against the defendant by telling the jury that one element of the crime—such as guilty knowledge in this case—has been proved beyond a reasonable doubt, so the jury needn't worry its collective head over that one. *Sandstrom v. Montana, supra;* LaFave & Scott, Handbook on Criminal Law 53 (1972). Finally, a set of jury instructions might be so radically defective as in effect to direct a verdict in whole or part against the defendant.

■ *Why* taking the case away from the jury should be reversible error—no matter how powerful the evidence of guilt —is, like so many propositions in law, far from obvious as an original matter. To say, as the Supreme Court did in *Rose v. Clark, supra,* 106 S.Ct. at 3106, that "the error in such a case is that the wrong entity judged the defendant guilty," does not differentiate a criminal from a civil case, where the right to jury trial is not thought inconsistent with the granting of a directed verdict against either party when the case is clear. The distinction may seem to be that the jury has a right to acquit a criminal defendant on bad as well as good grounds but has no corresponding right in civil cases, but again the question is why, and anyway the jury has no such "right" even in criminal cases, popular myth not-

withstanding. It has the *power* to acquit on bad grounds, because the government is not allowed to appeal from an acquittal by a jury. But jury nullification is just a power, not also a right, *United States v. Anderson,* 716 F.2d 446, 449–50 (7th Cir. 1983); *United States v. Dougherty,* 473 F.2d 1113, 1137 (D.C.Cir.1972); Devlin, The Judge 117–48 (1979), as is shown among other things by the fact noted above that a trial error which favors the prosecution is harmless if no *reasonable* jury would have acquitted, though an actual jury might have done so.

■ A better ground for the rule against directing a verdict in whole or in part against a criminal defendant may be the civilizing effect that is assumed to result from adherence to the fundamentals of our adversarial criminal process. If the judge had sentenced Kerley *before* trial (though he had not pleaded guilty), on the ground that his guilt was a foregone conclusion and his demand for trial by jury an obvious delaying tactic and waste of the taxpayers' money, the violation of Kerley's procedural rights would not be excused by proof, however overwhelming, that no reasonable (or for that matter unreasonable) jury would have acquitted him. See *United States v. Cerro,* 775 F.2d 908, 916 (7th Cir.1985); *Walberg v. Israel,* 766 F.2d 1071, 1074 (7th Cir.1985). It would be a bit like turning a defendant over to a lynch mob— an intolerable procedure even when the defendant's guilt is plain and the punishment imposed by the mob is no greater than the lawful punishment for his crime. But there is a big difference between a judge's directing a verdict against a defendant on the basis of overwhelming evidence of guilt, and a complete bypassing of judicial procedure. So we are right back with the basic question why juries should be allowed to acquit defendants lawlessly, and moreover why their power to do so should be thought such a cornerstone of civilized procedure that an encroachment on that power is reversible error. But we shall not need to plumb these mysteries further; it is enough to note that among the errors to which the harmless-error rule does not apply is an error that has the practical effect of withdrawing the issue of guilt from the jury.

■ This discussion shows that there is more to the plain-error rule than we let on

before. We said a plain error is not only a clear one but one that probably changed the outcome of the case. But we have just seen that some errors are so disturbing that they are deemed plain, and hence reversible even if not properly preserved for appeal, though they probably made no difference to the outcome of the trial. Cf. 3A Wright, Federal Practice and Procedure § 856, at pp. 340–41 (2d ed. 1982). And one of these is to direct a verdict against the defendant. See *Rose v. Clark, supra,* 106 S.Ct. at 3106.

■ But Judge Shabaz did not direct a verdict against Kerley; he merely failed to instruct clearly on an element of the crime. The question is whether such an error is always reversible. We think not. Any intimations in *Connecticut v. Johnson,* 460 U.S. 73, 87–88, 103 S.Ct. 969, 978, 74 L.Ed.2d 823 (1983) (plurality opinion), that it is were stilled by *Pope v. Illinois,* — U.S. ——, 107 S.Ct. 1918, 1922 n. 7, 95 L.Ed.2d 439 (1987), which rejects the proposition that "a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof." In that case, a prosecution for obscenity, the jury was incorrectly instructed to consider the redeeming value of the allegedly obscene magazines under a "values of the community" standard rather than an objective, "reasonable man" standard.

That is different from a case such as the present one, where an element is omitted from the instructions (or at least not clearly included within them); but we do not see why the difference should be determinative. The Court's emphasis in *Pope* was on the effect, rather than character, of the error. There are as we have seen errors so gross that they cannot be excused by reference to their certain lack of impact on the jury's deliberations; but merely because the error concerns an element of the crime does not place it in that category. This court has interpreted the category very narrowly. In *United States ex rel. Ross v. Franzen,* 688 F.2d 1181, 1186–87 (7th Cir. 1982), sitting en banc, we held that a trial judge's refusal to submit a straight not-guilty form to the jury, because the defendant had not denied that he had committed the murder for which he was being prosecuted but had merely argued that he was

insane at the time, was harmless error. No rational jury could have acquitted the defendant, as distinct from finding him not guilty but insane. *United States v. Sherwood*, 770 F.2d 650, 653–54 (7th Cir.1985), held that failure to define the statutory term "willful" was harmless. Neither case is identical to the present one but both express a reluctance to reverse a conviction because of defective instructions even if the defects concern the elements of the crime, unless the defects might have made a difference to a rational jury.

The picture in the other circuits is mixed. *Hoover v. Garfield Heights Municipal Court*, 802 F.2d 168, 175–78 (6th Cir.1986), in reiterating the Sixth Circuit's position that failure to instruct on an essential, as distinct from technical, element of the crime is always plain error, discusses the split among the circuits on this question. The contrary position is illustrated by *Redding v. Benson*, 739 F.2d 1360, 1363–65 (8th Cir.1984); but cf. *United States v. Voss*, 787 F.2d 393, 398–400 and n. 4 (8th Cir.1986). Our circuit has not taken sides (the question was expressly reserved in *Cole v. Young*, 817 F.2d 412, 427 (7th Cir. 1987)), but the cases we cited earlier suggest that we would not—and we do not—agree with the Sixth Circuit's position. For one thing, the distinction between essential and technical elements is artificial, to say the least. Every element of a crime is essential; if it is not proved, the defendant walks. *United States v. Herzog*, 632 F.2d 469, 472 (5th Cir.1980), a prosecution for willfully supplying false tax withholding information to an employer, held that it was not plain error to fail to instruct the jury that the defendant could not be guilty of the offense unless he was an employee when he supplied the misinformation. This was an essential element of the offense; was it somehow less important than other elements, and hence "technical" under the Fifth Circuit's schema, which is similar to the Sixth's? See *United States v. Winship*, 724 F.2d 1116, 1124 (5th Cir.1984). Who knows? The Fifth Circuit has not been consistent: with *Winship* compare *United States v. Brown*, 616 F.2d 844, 846 (5th Cir.1980), denying that there is a "rule that failure specifically to instruct on any single essential element of a crime per se constitutes plain error," and *United States v. Bass*, 784 F.2d 1282, 1284–85 (5th Cir. 1986), a case, like *Herzog*, where the court stated that the defendant's status as an employee was indeed an essential element of the defense but distinguished *Herzog* on the ground that the omission to instruct had not been prejudicial in that case. The approach in *Bass* is consistent with this circuit's approach, but not with *Winship*. The so-called "technical" elements are often (as with federally insured status in *United States v. Shively*, 715 F.2d 260, 265 (7th Cir.1983)) those designed to confine federal criminal liability to matters of federal concern, and policing these limitations is not obviously less important than assuring that the jury consider all of the "substantive" elements of the crime.

We prefer the statement by the Second Circuit that, *"in general,* failure to instruct the jury on an essential element of the offense constitutes plain error." *United States v. Golomb*, 811 F.2d 787, 793 (2d Cir.1987) (emphasis added); see also *Government of Virgin Islands v. Brown*, 685 F.2d 834, 839 (3d Cir.1982); cf. *United States v. Polowichak*, 783 F.2d 410, 417 (4th Cir.1986). That formulation allows for the exceptional case, and this is one. The district judge did not fail to instruct the jury on knowledge. He failed to give an instruction that distinguished between knowledge of fact and knowledge of legal duty; and although this was a serious failure, it was not so egregious as to justify a retrial in a case where the issue of guilty knowledge was not contestable and was barely if at all contested. We are worlds away from the paradigmatic case of plain error per se: the case where the judge directs a verdict of guilty.

Kerley next argues that the district court should have instructed the jury not to convict him merely on the admissions contained in his letters to the Director and General Counsel of the Selective Service System and in his statement to the FBI agents. Kerley appeals to the rule that requires proof of the "corpus delicti" of the crime, which is to say, proof—apart from the defendant's confession or admissions—that a crime actually occurred. The rule is a vestige of a time when brutal methods were commonly used to extract confessions, sometimes to crimes that had not been committed, see generally Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U.Pa.L.Rev. 638 (1955), though even in the bad old days

confessions had (in principle at least) to be corroborated, see Langbein, *Torture and the Law of Proof* (1977). Never well adapted to its purpose (on which see *id.* at 13–14) of preventing the conviction of a person on the basis of an unreliable confession—since the crime might have occurred yet have been committed by someone other than the defendant—the corpus delicti rule no longer exists in the federal system, where the requirement is instead that there must be "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954); see also *United States v. Roth,* 777 F.2d 1200, 1206 (7th Cir.1985); 2 Wright, Federal Practice and Procedure § 414, at pp. 515–17 (2d ed. 1982); see generally McCormick on Evidence § 145 (Cleary 3d ed. 1984). This requirement is easily met in a case such as the present, which does not involve arrest, interrogation, and confession. Kerley's admissions were proudly volunteered, many of them before he was threatened with prosecution. And certainly the failure to give an instruction on corroboration could not have been plain error (Kerley had not requested such an instruction), since Kerley's admissions were well corroborated by the Selective Service System's two searches of its files, which turned up no registration by him. Of course, as Kerley points out, the Selective Service System loses registrations. But the two futile searches combined with Kerley's admissions dispelled any reasonable doubt that Kerley had failed to register. Cf. *United States v. Rogers,* 454 F.2d 601, 604 (7th Cir.1971).

■ Least of the alleged trial errors is the judge's having instructed the jury that they "should" rather than "must" acquit Kerley in the event the government had failed to prove his guilt beyond a reasonable doubt. "Must" is preferable; but it is hardly plausible that the jury supposed that while they "should" acquit Kerley if he was not guilty beyond a reasonable doubt, they didn't have to acquit him if they didn't want to. Juries know better than that. We add that the judge also said that the jury "should," not "must," convict Kerley if they found that he was guilty beyond a reasonable doubt. In context, "should" was imperative—not hortatory—throughout the instruction.

■ Kerley argues that the judge relied on misinformation and improper considerations in sentencing him to three years in prison (two years short of the statutory maximum) plus a $10,000 fine (the statutory maximum). The government with commendable candor acknowledges that there are ambiguities in the transcript of the sentencing proceeding and that a remand for resentencing might be in order. We agree. Although the sentence was lawful in the sense of being within the limits set in the statute, and although the judge's discretion to impose a lawful sentence is plenary in the absence of irregularities, see, e.g., *Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974); *United States v. Hoffman,* 806 F.2d 703, 713 (7th Cir. 1986); *United States v. Ely,* 719 F.2d 902, 906 (7th Cir.1983), a sentence predicated on misinformation cannot stand, see, e.g., *United States ex rel. Welch v. Lane,* 738 F.2d 863 (7th Cir.1984).

The issue is not the length of the sentence, though Kerley complains about the length, noting that although in time of war—and even in time of peace when a draft is in effect—a willful failure to register with the Selective Service System is a very grave offense, it is less grave when there is no draft and the purpose of registration is merely to facilitate reinstatement in the event (which at this writing is remote or at least unlikely) that the draft is reinstated. Precisely because the burdens of registration are today so trivial, willful nonregistration currently appears to be limited to a tiny handful of "peace activists," such as Kerley, who at the time of sentencing was (and is) the Executive Director of the Committee Against Registration and the Draft. The danger to the nation posed by such groups is small. According to a list supplied by Kerley and not challenged by the government, only 19 other people have been indicted and convicted under 50 U.S.C.App. § 462 since 1982 and only eight have been sentenced to prison or jail—one for two years, one for a year and a half, the others for six months or less. The Sentencing Guidelines (not applicable to this case, however) recommend a sentence of zero to six months for this offense (provided the defendant has no criminal history, as Kerley does not) and a fine of between $500 and $5,000. See United States Sentencing Commission, Guidelines Manual

pp. 2.111, 5.2, 5.18 (1987). Under current conditions, long sentences for willful non-registration are unlikely to have much effect beyond creating martyrs for the "peace movement."

Judge Shabaz, however, may disagree, and it is his prerogative to do so, for the sentence he imposed was within the statutory limit. But the sentence may have been based on legal and factual misunderstandings, a ground for remanding unrelated to the length of the sentence. The judge said in the sentencing hearing that a "sentence of three years would mean perhaps one year [of actual imprisonment] *or less.*" (Emphasis added.) This is incorrect. The time served could not be less than one year, because with irrelevant exceptions a federal prisoner must serve a minimum of one-third of his prison sentence before he is eligible for parole. 18 U.S.C. § 4205(a); *United States v. Fountain,* 768 F.2d 790, 799 (7th Cir.1985). Thus, Judge Shabaz may have sentenced Kerley to a longer term in prison than the judge realized.

Second, Judge Shabaz appears to have been influenced in his sentencing decision by a belief "that there is the encouragement of the Defendant to others to violate, as perhaps is indicative of his position as the executive director of the Resistance Movement.... And, it would appear ... that it is his continued desire to actively and perhaps illegally oppose those laws without resorting to appropriate legislative action.... And so, in order to deter the Defendant from his continued illegal activity and his aiding and abetting those others who may follow in his footsteps, ... the Court has determined that the higher sentence is the appropriate sentence...." But Kerley is not executive director of the "Resistance Movement"; nor is there any evidence that he ever has or intends to "aid and abet" other persons to violate the registration statute. The Committee Against Registration and the Draft has never, at least so far as we can tell from the record in this case (including the presentence report), engaged in any illegal activities. Its statement of principles does say, "We support many forms of draft resistance, including non-compliance and civil disobedience," but the form of support is unclear and there is no indication that it goes beyond moral support or constitutionally protected advocacy. See, e.g., *Hess v. Indiana,* 414 U.S. 105, 108, 94 S.Ct. 326, 328, 38 L.Ed.2d 303 (1973) (per curiam). The Committee states in its amicus brief that the tepidness of its advocacy may have caused it to be ostracized by other organizations that are opposed to draft registration.

Maybe all Judge Shabaz had in mind was that the *example* of Kerley (if published by the media) would incite others to violate the registration act. This would be a permissible consideration but it is not what the judge said. He said that Kerley had to be incapacitated in order to prevent him from inciting illegal activity, and there is no evidence that Kerley has ever committed, or contemplated committing, any illegal act except his own refusal to register for the draft. We need not consider to what extent, if any, a convicted criminal defendant can be prevented, directly or indirectly, from urging others to engage in civil disobedience; for Judge Shabaz made clear that he did not intend to curtail Kerley's liberty of expression. He did, however, rely on misinformation in sentencing Kerley, and a remand for resentencing is therefore required.

■ But the judge was quite right to dismiss Kerley's Rule 35 motion for reduction of sentence, on the ground of lack of jurisdiction. "[T]he circuit courts have uniformly acknowledged that the sentencing court is without jurisdiction to rule on a motion for reduction of sentence once a notice of appeal has been docketed." *United States v. Distasio,* 820 F.2d 20, 23 (1st Cir.1987). Rule 35 comes into play after the defendant has exhausted his appellate remedies. It makes no sense for the judge to be considering whether to reduce the defendant's sentence at the very moment when the issue of sentence is pending in this court on the defendant's appeal.

The order in No. 87–2644 is affirmed. The conviction in No. 87–1882 is affirmed but the sentence is vacated and the district judge directed to resentence the defendant.

### SUPPLEMENTAL OPINION

PER CURIAM. The petition for rehearing, filed by the defendant, Gillam Kerley, persuades us that Kerley is entitled to a new trial; and we modify our decision of January 28, *supra* at 932 accordingly.

We held that the district judge had erred in failing to make clear in his instructions to the jury that to be found guilty of the crime of refusing registration in the armed forces (50 U.S.C. § 462(a)) Kerley had to have known that he had a duty to register, that is, had to have acted willfully; it was not enough to tell the jury that it had to find that Kerley had known he had not registered. But we further held that this was not a plain error in the circumstances and hence that Kerley could not upset his conviction unless he had stated his ground for objecting to the instructions—and, we said, he had not.

In this we erred. We were led into error by Kerley's appellate counsel, who failed to include in the joint appendix on appeal the relevant pages of transcript showing that Kerley had stated his ground for his objection, and by the government, which should have brought the oversight to out attention. Kerley's counsel had rectified the oversight in his petition for rehearing, and the government in its response does not argue that the rectification comes too late for us to consider it.

 Judge Shabaz had delegated the preparation of a final pretrial order to a magistrate; as part of the final pretrial conference the magistrate held a charging conference at which the parties submitted proposed instructions and objections thereto. Kerley objected to the instruction that required the jury to find only a knowing (in the narrow sense indicated earlier), and not also a willful, refusal to register, saying that "to knowingly fail to perform a duty a person must be aware of a duty and deliberately or willfully neglect to perform it." The magistrate incorrectly replied "that the definition of knowingly addresses the very problem about which you expressed concern," but added, "I have noted your objection for Judge Shabaz." The final pretrial order recited that Kerley objected to the instruction in question "in that it fails to include an element of willfulness or a showing of specific intent." At the instructions conference at trial, Judge Shabaz stated, "I do note the or perhaps the continuing objections that you may have as to the substance instructions, the elements of the offense." In light of this statement there was no need for Kerley to renew his objection on the matter of willfulness. In the circumstances, Kerley (who was not represented by counsel at trial) adequately stated the grounds for his objection, and therefore complied with Rule 30 of the Federal Rules of Criminal Procedure. The ground was valid, and although the error was not plain, the government does not argue that it was harmless; it was therefore a reversible error, so Kerley is entitled to a new trial.

The other grounds on which he seeks a rehearing have no merit, and there is no need to modify any part of our opinion except the statement that Kerley failed to object and the conclusion that he is not entitled to a new trial.