IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 15, 2015


**STATE OF TENNESSEE v. LOUIS ORLANDO HARMON**


**Appeal from the Circuit Court for Williamson County**
**No. IICR86652     Walter C. Kurtz, Judge**

_____

**No. M2015-00691-CCA-R3-CD – Filed February 3, 2016**
_____


Appellant, Louis Orlando Harmon, stands convicted of theft of property valued at $1,000 or more but less than $10,000; possession of tools used to interfere with anti-theft security devices; and driving while his license was suspended.  He was sentenced to six years for the theft of property offense, to a consecutive term of eleven months, twenty-nine days for the possession of tools offense, and to a concurrent term of six months for the driving offense.  On appeal, he argues that the trial court committed plain error by allowing an Academy Sports and Outdoors loss prevention officer to testify about the identification of appellant and his vehicle by other employees of the store.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Vanessa Pettigrew Bryan, District Public Defender; and Benjamin Cody Signer (on appeal) and Jesse C.M. Montagnino (at trial), Assistant District Public Defenders, for the Appellant, Louis Orlando Harmon.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Kim R. Helper, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## I. Facts

After a string of thefts at Academy Sports and Outdoors ("Academy") stores throughout the southeast, stores were notified of the description of the suspected thief and of his vehicle. An employee at the Franklin, Tennessee Academy store saw a man and vehicle matching this description in the store's parking lot and notified the police. The police detained appellant for driving on a suspended license and, upon searching appellant's car, found numerous items that matched the description of merchandise stolen from the Hoover, Alabama Academy store. Appellant was indicted for theft of property valued at $1,000 or more but less than $10,000 (based on his exercising control over stolen property); possession of tools used to interfere with anti-theft security devices; and driving while his license was suspended. He was convicted as charged and sentenced to six years for the theft of property offense, to a consecutive term of eleven months, twenty-nine days for the possession of tools used to interfere with anti-theft security devices offense, and to a concurrent term of six months for the driving on a suspended license offense.

At appellant's trial,[1] Brandon LeFort, a Senior Investigator for Loss Prevention with Academy, testified that an individual matching appellant's description targeted Academy stores in Mr. LeFort's region during June and July 2012. Mr. LeFort explained that the individual would spend two to three hours in a given store, remove shoes from the manufacturer's boxes, disable the security devices on the shoes, hide the shoes in Academy bags inside apparel fixtures, and hide the empty boxes throughout the apparel department. The individual would exit the store with a bag full of shoes for which he had not paid. Mr. LeFort said that the theft trend was discovered when employees began reporting that they had found large numbers of empty shoe boxes hidden in the stores. They used surveillance video to discover who had left the boxes. The video also showed the individual leaving the stores with a large bag in each hand and entering his vehicle, a blue Honda. The thefts in Mr. LeFort's region occurred in Hammond, Louisiana; Mobile, Alabama; and Gulfport, Mississippi.

The State showed surveillance video from each theft for the jury, aided by commentary from Mr. LeFort. Mr. LeFort testified that on July 12, 2012, he received information that appellant had been at the Academy store in Decatur, Alabama, and that employees had obtained the license plate number for appellant's vehicle. Mr. LeFort learned that the license plate number was registered to appellant. Mr. LeFort was shown a photograph of a car trunk filled with shoes, and he testified that the shoes matched the

---

[1] On appeal, appellant contests only Mr. LeFort's testimony; therefore, we will set forth Mr. LeFort's testimony in detail and other testimony in summary fashion.

sizes and styles of shoes missing from a particular store based on a report,[2] called a Pick Sheet, listing the missing merchandise. Mr. LeFort said that the shoes were valued at $99.99 for each pair and should have had "Electronic Article Surveillance" tags on them but did not. He also said that he had viewed a box of shirts and had identified those shirts as Academy merchandise.

On cross-examination, Mr. LeFort testified that the videos shown to the jury did not show appellant cutting off security sensors, emptying boxes, or hiding boxes in apparel fixtures. Mr. LeFort testified that he created Loss Prevention Incident Reports "as part of [his] regularly conducted business," and the defense entered a Loss Prevention Report from the Hammond, Louisiana store into evidence. Mr. LeFort agreed that the merchandise listed on the report did not include footwear. The defense introduced Loss Prevention Reports from stores in Mobile, Alabama, and Gulfport, Mississippi, into evidence and discussed those reports with Mr. LeFort. The defense also questioned Mr. LeFort about an email he received from the Decatur, Alabama store in which an employee from that store reported to Mr. LeFort that appellant had been in their store. Defense counsel read aloud,

> We believe that Louis Harmon was here in our store and just left around 9:30 this morning. . . . I . . . was walking by and he resembled a picture in the e-mail. He had two pairs of shoes and some apparel. He managed to get out of the store with two pairs of shoes, 2012 Nike Air Max's. He put the apparel down just before he walked out the door. He was wearing the same Adidas hat. He was also wearing the button-up long sleeve shirt with brown Khaki cargo pants.

Defense counsel also stated, "And then they managed to get a license plate." Mr. LeFort agreed that the email did not say that appellant left the store with two bags of shoes nor did it include "UPC" (universal product code) or "SKU" (stock keeping unit) numbers.

On re-direct examination, Mr. LeFort testified that another loss prevention investigator prepared a Loss Prevention Incident Report for an incident at the Hoover, Alabama store on July 11 that showed twelve pairs of gray and black Nike Air Max shoes, thirteen pairs of "Sunrise" Nike Air Max shoes, and twenty-eight "Nike Pro Core Tops" had been taken from the store.

Patrick Kelly testified that he was a manager at the Academy store in Hoover, Alabama, on July 11, 2012. He recalled seeing a man exiting the store with merchandise.

---

[2] During cross-examination, Mr. LeFort said that the merchandise was from Decatur, Alabama, but during re-direct examination, he testified that he had misstated and had meant to say that the merchandise was from Hoover, Alabama.

Mr. Kelly said that his employees had been looking for someone carrying a large bag to conceal merchandise because they had found empty shoeboxes hidden in the store.

Franklin Police Officer Nick Grandy testified that when he and his partner performed a "business check" at the Academy store in Franklin, a store employee informed them that a known shoplifter was possibly en route to the Franklin store. The employee provided the officers with appellant's name, photograph, description of appellant's car, and license plate number. The officers waited in the store's parking lot and were still there when appellant arrived. They approached him, learned that he had a suspended license, and arrested him for driving on a suspended license. Upon searching appellant, Officer Grandy found a folded Academy bag in one pocket and cutting pliers in another pocket. Officer Grandy found more bags, two more sets of pliers, and a pair of scissors in appellant's car. He located twenty-five athletic shirts, twenty-five pairs of Nike shoes, and three pairs of Turbo Shox shoes in the back seat of appellant's car.

John Rainey testified that he was the Senior Corporate Investigator for the southeastern Academy stores. He explained that he called the Academy store in Franklin, Tennessee, to alert them to the possibility that a shoplifter was coming to their store because it was the next closest store after the thefts in Decatur and Hoover, Alabama. On cross-examination, Mr. Rainey testified that Loss Prevention Incident Reports were regularly created when a theft occurred. He answered several questions about a specific report and explained that he did not list every UPC associated with the missing items because the information was not used for inventory tracking but rather to indicate which style of product had been taken.

Following Mr. Rainey's testimony, the State rested its case-in-chief. Appellant rested his case without presenting evidence. Subsequently, the jury convicted appellant of theft of property valued at $1,000 or more but less than $10,000; possession of tools used to interfere with anti-theft security devices; and driving while his license was suspended. The trial court sentenced him to six years for the theft of property offense, to a consecutive term of eleven months, twenty-nine days for the possession of tools offense, and to a concurrent term of six months for the driving offense.

## II. Analysis

Appellant argues that it was plain error for the trial court to allow Mr. LeFort to testify that employees of Academy had identified appellant and had obtained appellant's license plate number. Specifically, he contends that the information was hearsay that did not meet the business records exception and that the testimony violated his right to confront the employees themselves. We conclude that appellant cannot meet the requirements for plain error review.

-4-

The accepted test for plain error review requires that:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). To rise to the level of "plain error," an error "'must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)). All five factors must be established by the record before a court will find plain error. *Smith*, 24 S.W.3d at 282. Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record.

Prior to trial in this case, the assistant district attorney general stated during a motion hearing that she and defense counsel "agree[d] that most of what the loss prevention director can testify [about] encompass[ed] business records. And [they had] agreed that [the] loss prevention person can testify to certain things that some of his employees reported to him to show why they took the action that they took." Appellant did not object to the testimony at trial. Indeed, during cross-examination of Mr. LeFort, appellant introduced into evidence reports generated by Mr. LeFort that included appellant's picture, description, and license plate number. Taking these things into consideration, we conclude that appellant cannot now claim that he did not waive the issue for tactical reasons. Therefore, we decline to review the issue for plain error.

## CONCLUSION

Based on the record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE