IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 24, 2024 at Knoxville

**STATE OF TENNESSEE v. JOSHUA MOORE**

**Appeal from the Criminal Court for Shelby County**
No. 22-01834    James Jones, Jr., Judge

_____

**No. W2023-00926-CCA-R3-CD**

_____

The Defendant, Joshua Moore, was convicted of first degree premeditated murder.  On appeal, the Defendant argues that the evidence is insufficient to support his conviction, specifically regarding whether he acted with premeditation.  Additionally, he argues that the trial court erred by admitting a responding police officer's body camera ("bodycam") footage, contending that the recording was overly prejudicial in violation of Tennessee Rule of Evidence 403.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Rosalind Elizabeth Brown (on appeal), and Michael Campbell and Eric Mogy (at trial), Memphis, Tennessee, for the appellant, Joshua Moore.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Christopher Judson Lardeau and Shannon Toon, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.    FACTUAL AND PROCEDURAL HISTORY**

This incident arose from a December 18, 2021 shooting at a Wendy's restaurant in Memphis, Tennessee.  From this incident, a Shelby County grand jury charged the

Defendant with first degree premeditated murder of the victim, Terrence Edwards. *See* Tenn. Code Ann. § 39-13-202(a)(1).

Lastasha Andrews testified that she was working at Wendy's restaurant on December 18, 2021. She took the Defendant's drive-through order for a "Baconator," and he requested that his burger be prepared fresh. The Defendant was asked to pull aside while his order was prepared. While the Defendant waited in the parking lot for his food, the victim took the trash out and propped open the door with a food tray, as the dining area of the restaurant was closed. Around this time, the Defendant entered the restaurant through the propped door and informed the Wendy's staff that they had forgotten his order. When he entered the restaurant, the food tray fell, and the door closed and locked. Ms. Andrews said that the Defendant was calm when he entered the restaurant, and she told him that they would make his burger.

The victim returned to the door and was locked out. Another employee, Chris Bryant, let the victim back inside the restaurant. Ms. Andrews stated that the victim was upset about being locked out. While the victim was returning the trash cart, he and the Defendant crossed paths. The victim "looked" at the Defendant. Ms. Andrews "guess[ed]" the victim did so because the Defendant, as a customer, was not supposed to be inside the restaurant. She denied that the victim "walked up on" the Defendant and instigated the incident but said that the Defendant "walked up and kept walking up on [the victim]" and pushed the victim. The victim then pushed the Defendant back.

Ms. Andrews did not remember what was said but testified that the victim and the Defendant exchanged words and the Defendant was "escorted" from the building by Mr. Bryant, who was also restraining the victim. Ms. Andrews affirmed that the victim had his hand in his pocket and acknowledged that while she knew the victim only had keys in his pocket, this was not clear from the video recording. Once back inside, "Katie," another Wendy's employee, attempted to calm down the victim. Ms. Andrews continued to prepare the Defendant's order and believed the situation was over. She stated that the victim again exited the restaurant after Katie grabbed the victim's arm and unsuccessfully attempted to bring him back inside. Ms. Andrews then heard gunshots. After the shots were fired, Mr. Bryant ran out the door with a gun in his hand. Ms. Andrews followed him and called the police. She denied seeing Mr. Bryant fire his gun at the Defendant's vehicle while she was on the phone with the police. She, however, affirmed that she heard gunshots after she and Mr. Bryant had exited the restaurant and that Mr. Bryant was fired after this incident. She stated that the victim did not have a weapon.

Ms. Andrews said that the Defendant did not have an issue with any of the Wendy's staff before the victim entered the restaurant. She said there was no indication that the Defendant and victim knew each other. However, she stated that she did not believe the victim was upset at the Defendant for locking him out of the restaurant. She explained that she believed the victim and the Defendant exchanged words because they were "mean-mugging" each other and that "it had nothing to do with the door." When asked why she believed the Defendant shot the victim, she answered, "disrespect."

Ms. Andrews said that she never saw Mr. Bryant with a gun before the Defendant was escorted from the restaurant. She first stated that the Defendant was neither threatened verbally nor with a gun by the victim or another Wendy's employee, but she later admitted that while she did not hear any threats, she was unable to definitively know whether any were made. She also acknowledged that she did not know whether Mr. Bryant had his gun on his person during the incident or had it in his backpack before retrieving it.

Ms. Andrews affirmed that she was shown a photographic lineup six days after the shooting and identified the Defendant as the shooter. Ms. Andrews also identified the Defendant in the courtroom.

Memphis Police Department ("MPD") Officer Shawna Roten testified that she was the first responder to arrive at Wendy's after the shooting. When she arrived, she observed the victim lying on the ground near the restaurant's entrance. She located gunshot wounds to the victim's leg and under his right armpit. She rendered medical aid and stated that the victim was still alive when the ambulance arrived. She did not observe any weapons on or around the victim and said that the victim only had keys in his hands. She acknowledged that she did not know what the victim had in his possession before she arrived at the crime scene and that she did not search others at the scene for weapons. She affirmed that she was wearing a bodycam and that the events were captured on video. Officer Roten's bodycam footage was entered as an exhibit with no objection.

Denis Persson testified that she was a district manager for Wendy's restaurants. She stated that she downloaded the raw surveillance footage for the police. She explained that while Wendy's cameras showed a live feed, the system recorded only motion from this live feed. The Wendy's video recordings were entered as an exhibit.

Rebecca Gross testified that she worked as a technical analyst for the Shelby County District Attorney's Office and that she created a video montage from the raw surveillance footage from Wendy's and from Officer Roten's bodycam footage. Her edited video montage showed multiple camera angles and chronologically followed the movements of

the Defendant and the victim. The video montage was entered as an exhibit with no objection and was played for the jury. The video montage reflected what Ms. Andrews and Officer Roten had testified to regarding the events. The video montage additionally showed the Defendant exiting the restaurant and walking toward the parking lot in the direction of his vehicle, which is not in the frame, then walking back toward the restaurant from his vehicle and peering inside the Wendy's drive-through window. After looking through the window, he walked toward the restaurant's entrance and pulled a gun from his pocket. The video angle then switched to the victim exiting the restaurant holding a set of keys. When the Defendant saw the victim, he immediately shot the victim multiple times and then walked back toward his vehicle.

The video montage then switched to Officer Roten's bodycam footage, which contained the only audio in the recording. This section of the video showed Officer Roten arriving at the crime scene and medically assessing the victim, who was lying on the ground holding a set of keys in his hand. Officer Roten applied a tourniquet to the victim's leg and only a small amount of blood was visible on the victim's right ankle. The victim was breathing heavily, occasionally moaning, and patting his chest. A Wendy's employee was heard telling Officer Roten that the victim was shot in the chest. Neither gunshot wound was visible in the video, and the victim was still alive at the end of the video montage.

Ms. Gross stated that she also extracted still-shot photographs from the video footage. From these photographs, the Defendant is seen at 22:40:30 leaving the Wendy's lobby. The Defendant is then seen at 22:41:04 outside the Wendy's drive-through. The victim is then shown at 22:41:12 exiting the restaurant with the Defendant outside the restaurant with his arm outstretched. The next photograph shows the Defendant at 22:41:14 backing away from the restaurant with a flash coming from his outstretched arm. These photographs were entered as exhibits to Ms. Gross' testimony.

MPD Sergeant Latonia White testified that the Defendant was identified through a "media release" and that a warrant was issued for his arrest once the Wendy's employees had positively identified him as the shooter. Deputy Joe Pedraza from the Shelby County Sheriff's Office testified that he took the Defendant into custody without incident on January 4, 2022.

Dr. Juliette Scantlebury testified as an expert in forensic pathology and stated that she performed the victim's autopsy. The victim had two gunshot wounds, one to his right lateral chest with no exit wound and one to his left thigh. The gunshot wound to the victim's chest had damaged the victim's liver, vena cava, and diaphragm. She stated the cause of death was the gunshot to the victim's torso and the manner of death was homicide.

- 4 -

She acknowledged that a homicide ruling referred only to a death occurring at the hands of another and was not a commentary on the events surrounding the incident. Dr. Scantlebury's autopsy report and photographs of the victim's injuries were entered as exhibits.

On May 3, 2023, the jury found the Defendant guilty of first degree premeditated murder, and the trial court sentenced the Defendant to life imprisonment. On June 2, 2023, the Defendant filed a motion for new trial arguing that the evidence was insufficient to support his conviction, specifically regarding the element of premeditation, and that Officer Roten's bodycam video was overly prejudicial. The trial court denied the motion. This timely appeal followed.

## II.    ANALYSIS

### A.    Sufficiency of the Evidence

The Defendant argues that the evidence is insufficient to prove that he acted with premeditation. The State contends that the evidence is sufficient because the Defendant's premeditation was shown through many of the enumerated factors of premeditation, as well as other circumstances tending to show the killing followed the exercise of reflection and judgment. We agree with the State.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh

- 5 -

or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and to all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

Premeditated first degree murder is defined as "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id*. § 39-11-106(a)(21).

> [P]remeditation is an act done after the exercise of reflection and judgment. Premeditation means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

*Id*. § 39-13-202(e) (quotation marks omitted). "Premeditation may be inferred from the manner and circumstances of the killing." *Finch v. State*, 226 S.W.3d 307, 318 (Tenn. 2007) (citation omitted). Several circumstances may bear on the existence of premeditation, including but not limited to:

(1) The use of a deadly weapon on an unarmed victim;

(2) The particular cruelty of the killing;

(3) Threats or declarations of intent to kill;

(4) The procurement of a weapon;

(5) Any preparations to conceal the crime undertaken before the crime was committed;

(6) The destruction or secretion of evidence of the killing;

(7) Calmness after the killing;

(8) Evidence of motive;

(9) The use of multiple weapons in succession;

(10) The infliction of multiple wounds or repeated blows;

(11) Evidence that the victim was retreating or attempting to escape when killed;

(12) The lack of provocation on the part of the victim; and

(13) The failure to render aid to the victim.

*State v. Reynolds*, 635 S.W.3d 893, 917 (Tenn. 2021) (citing cases). The list of specific circumstances developed through case decisions is not exhaustive, however, and the trier of fact "is not limited to any specific evidence when determining whether a defendant intentionally killed the victim after the exercise of reflection and judgment." *State v. Davidson*, 121 S.W.3d 600, 615 (Tenn. 2003) (internal quotation omitted).

Here, the only issue in dispute is whether the Defendant acted with premeditation. He contends that the victim was the initial aggressor and that there was insufficient time between his altercation with the victim and the shooting for him to have been free from excitement and passion. Our law, however, requires no definite time period for premeditation to form. Tenn. Code Ann. § 39-13-202(e). It is the mental state of the defendant rather than the length of time that is the material point. *State v. Bullington*, 532 S.W.2d 556, 560 (Tenn. 1976). Viewed in a light most favorable to the State, the evidence showed that the Defendant felt disrespected by the victim and instigated the incident by "walking up on" and pushing the victim. After the Defendant left the restaurant, the situation appeared to be over according to Ms. Andrews, who continued to prepare the Defendant's order. However, rather than driving away or waiting in his vehicle for his order to be completed, the Defendant returned to the restaurant, looked inside the drive-through window, proceeded toward the entrance, and retrieved a gun from his pocket—all while the victim remained inside the restaurant. The Defendant immediately fired upon the unarmed victim as the victim exited the restaurant, striking him twice. The Defendant then, without attempting to render aid, left the scene and was not apprehended until weeks later. *See State v. Jones*, No. W2011-01990-CCA-R3-CD, 2012 WL 4049175, at *15-16 (Tenn. Crim. App. Sept. 14, 2012) (holding the evidence was sufficient to support

premeditation when a defendant shot an unarmed victim multiple times after a physical altercation).

The jury heard the defense's theory that there was insufficient time for the Defendant to act with premeditation and was instructed on lesser included offenses. However, the jury saw the video montage, heard the witnesses' testimonies, and decided to reject the defense's theories, as was its province. *See Bland*, 958 S.W.2d at 659. We conclude that the evidence surrounding the homicide was sufficient for the jury to infer premeditation. The Defendant is not entitled to relief on this issue.

### B.     Admission of Body Camera Video

The Defendant argues that the trial court abused its discretion by admitting Officer Roten's bodycam video. Specifically, the Defendant contends that the video recording was overly prejudicial in violation of Tennessee Rule of Evidence 403. The State argues that the Defendant has waived this issue by failing to contemporaneously object to the admission of the video recording and is not entitled to plain error review of this issue. We agree with the State.

#### 1.     Waiver for Failure to Contemporaneously Object

"In order to challenge the introduction of evidence at trial on appeal, counsel must make a contemporaneous objection to the admission of the evidence." *State v. Halake*, 102 S.W.3d 661, 669 (Tenn. Crim. App. 2001) (citation omitted). Here, the Defendant failed to contemporaneously object when Officer Roten's bodycam footage was entered at trial or when the video montage was entered and played for the jury. *See* Tenn. R. Evid. 103(a)(1); Tenn. R. Crim. P. 51(b). The Defendant has, therefore, waived plenary review of this issue. *See* Tenn. R. App. R. 36(a). As such, appellate review of the bodycam's admission is limited to plain error review. *See* Tenn. R. App. P. 13(b).

#### 2.     Plain Error Review

In conducting plain error review, a court will reverse for plain error only if the five following prerequisites are satisfied:

(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did

not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be present in the record before an appellate court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. *Id*. at 283. In order to warrant plain error relief, the magnitude of the error must have been so significant "that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. (1988)).

Appellate courts have the discretion to consider an issue under plain error review even when a defendant has failed to properly preserve that issue for appeal. *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007); *see* Tenn. R. App. P. 13(b). "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). Our supreme court has advised appellate courts to exercise plain error review sparingly. *Bledsoe*, 226 S.W.3d at 354. As such, it is a defendant's burden to show that the issue is entitled to plain error relief. *Id*. at 355.

While this court has held that plain error rarely arises in evidentiary rulings, *see State v. Haymer*, 671 S.W.3d 568, 578 (Tenn. Crim. App. 2023), the Defendant here failed to request such relief regarding the admission of Officer Roten's bodycam footage. *See* Tenn. R. App. P. 27(a)(7) (requiring a brief to contain an argument section setting forth the contentions of the appellant with respect to the issues presented for review); *State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *3 (Tenn. Crim. App. Oct. 30, 2023) (explaining that a party seeking plain error relief must generally raise and argue it as with any other issue on appeal), *no perm. app. filed*. Furthermore, the State argued that in addition to the Defendant's waiving plenary review of the issue, the Defendant also failed to request review under plain error. Notwithstanding notice of the State's waiver argument, the Defendant failed to file a reply brief responding to this argument. When a defendant fails to respond to a waiver argument, "only particularly compelling or egregious circumstances" will justify sua sponte consideration of plain error relief. *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *5 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*. No such circumstances exist here. The Defendant has failed to meet his burden showing that he is entitled to plain error relief, and we decline to consider such relief on our own under the circumstances here.

### III.  CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
KYLE A. HIXSON, JUDGE