IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson August 4, 2015


**STATE OF TENNESSEE v. RANDY ANTHONY SANDERS**


**Appeal from the Criminal Court for Sumner County**
**No. 6212013      Dee David Gay, Judge**

_____


**No. M2014-02535-CCA-R3-CD – Filed September 18, 2015**

_____


Appellant, Randy Anthony Sanders, was convicted of theft valued at $1,000 or more but less than $10,000, a Class D felony. The trial court sentenced appellant as a Range II, multiple offender to seven years in confinement. On appeal, appellant argues that: (1) the evidence was insufficient to support his conviction; (2) the indictment was improperly aggregated into one count and that because of the aggregation, the State should have made an election of facts; (3) the State improperly asked the jury to view the crime from the victim's perspective during closing argument; (4) the State improperly argued facts that were not in the record during closing argument; and (5) the cumulative effect of these errors requires a new trial. Following our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Christopher V. Boiano (on appeal); and Jon J. Tucci (at trial), Nashville, Tennessee, for the Appellant, Randy Anthony Sanders.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

This case concerns the theft of a car and numerous small items from a family's home. As a result of the incident, appellant was indicted for theft valued at $10,000 or more. Appellant was subsequently convicted of theft valued at $1,000 or more but less than $10,000.

## I. Facts

Portland Police Department Officer Carlos Cruz testified that on January 31, 2013, he was working the midnight shift and that in the early morning hours of February 1, 2013, he responded to Mary Barcomb's home to take the initial report that appellant had stolen Mrs. Barcomb's vehicle. After his arrival, Mrs. Barcomb told Officer Cruz that she had received a telephone call from her husband, who was a truck driver and was out of town, asking if she had used her debit card to purchase items totaling $600 that evening. Mrs. Barcomb responded that she had not made any such purchases. Mrs. Barcomb tried to locate her debit card, but the card was missing from her purse. She then looked out the door and noticed that her gray 2012 Toyota Camry, which she had purchased the day prior to this incident, was also missing. Mrs. Barcomb told Officer Cruz that she had allowed appellant, the son of her roommate, to spend the night in her home because appellant did not have a ride back to Memphis where he lived. Mrs. Barcomb explained to Officer Cruz that appellant had called her to apologize for taking her car and that appellant had stated that he had needed a way to return to Memphis. On February 22, 2013, Mrs. Barcomb also provided law enforcement with a list of items that had been taken from her home. To Officer Cruz's knowledge, the Barcombs drove to Memphis and recovered Mrs. Barcomb's car themselves.

During cross-examination, Officer Cruz stated that Mrs. Barcomb had received a telephone call and discovered that her car was missing at approximately 9:30 p.m. on January 31 but that she did not call dispatch until 2:00 a.m. on February 1. Officer Cruz testified that during his review of the investigative folder of this case, he saw no information regarding an eyewitness of the theft and that the car was found at Eaton Pointe Apartments in Memphis, which was not the location listed as appellant's permanent address on his driver's license.

Charles Edward Barcomb testified that on January 31, 2013, he was driving a tractor-trailer and was away from home. Mr. Barcomb explained that he checked his bank account at approximately 2:00 a.m. on February 1 and noticed that there were three transactions totaling $200 each, which Mr. Barcomb stated was unusual because his wife was generally not "out that time of the morning." Mr. Barcomb called Mrs. Barcomb to inquire about the transactions; however, Mrs. Barcomb denied making the purchases. Mrs. Barcomb told Mr. Barcomb that she was unable to locate her debit card and that

their car was missing. Mr. Barcomb explained that they had just purchased the 2012 Toyota Camry for $27,283.99 on the day prior to this incident. Mr. Barcomb testified that after purchasing the car, he put a "truck GPS," which is used in tractor-trailers, in the car. Mr. Barcomb explained that when the Camry was returned to him, the GPS system was missing. Mr. Barcomb testified that he was able to locate his car by calling appellant's mother, whom he knew, and appellant's mother obtained the information about the car's location from appellant. After learning the car's location, Mr. Barcomb called the local authorities and relayed the information. He went to Memphis three days later and retrieved the car from an impound lot. Mr. Barcomb explained that his grandson's Xbox Kinect was also taken from his home and that the Xbox was not found inside his car when it was recovered.

During cross-examination, Mr. Barcomb stated that he retrieved his car after Memphis police officers had processed it. Mr. Barcomb explained that the unauthorized withdrawals were made from an ATM in Memphis, Tennessee.

Mary Barcomb testified that she knew appellant's mother and grandmother and that appellant's mother had lived with Mrs. Barcomb for three to four months due to Mrs. Barcomb's needing aid because of medical issues she was experiencing. Mrs. Barcomb stated that appellant came to her home in January 2013 because several of his family members were preparing to drive to Memphis, where appellant resided, and he was going to ride back with them. Mrs. Barcomb explained that she was inside her house and that appellant knocked on her door, stating that the family members had left him. Mrs. Barcomb took appellant with her when she left to do errands. One of Mrs. Barcomb's stops was at Food Lion, and Mrs. Barcomb used her debit card and PIN number to pay for her items. Mrs. Barcomb stated that when she paid, appellant stood directly behind her. Mrs. Barcomb also took appellant to a Western Union store inside of Kroger so that he could get money for a bus ticket. After her errands, Mrs. Barcomb and appellant returned to Mrs. Barcomb's home, and Mrs. Barcomb allowed appellant to spend the night in her guest bedroom. Mrs. Barcomb explained that her intent was to take appellant to the bus station after her grandson went to school the following morning.

Mrs. Barcomb explained that later that night, she received a telephone call from her husband about the missing money and discovered that her debit card was missing. She knocked on the door to the guest room where appellant was sleeping, but receiving no answer, she went inside and discovered that appellant was not inside. Mrs. Barcomb explained that she then went to the garage to see if appellant was smoking and discovered that her car and car keys were missing. Mrs. Barcomb called the police to make a report. Mrs. Barcomb also received a call from appellant in which appellant admitted taking the car because he had to return to Memphis. Mrs. Barcomb stated that when her grandson came home from school, he discovered that his Xbox was also missing. As a result, Mrs. Barcomb searched for missing items and compiled an itemized list, which included

-3-

games, CDs, movies, a GPS system, a laptop, and the Xbox. Mrs. Barcomb estimated that the total value of the missing items was approximately $1,000-2,000, based upon the fact that her insurance provided a monetary insurance settlement over the $1,000 deductible that she had to pay. Mrs. Barcomb testified that she never gave appellant permission to take her car.

During cross-examination, Mrs. Barcomb denied that her husband had called at 9:30 p.m. on the night of the theft. Mrs. Barcomb agreed that a PIN number was required to withdraw money from an ATM. She agreed that her car did not sustain any damage as a result of this incident. Mrs. Barcomb testified that appellant called her around 5:00 a.m. on February 1. She conceded that it was a possibility that appellant did not intend to keep her vehicle but that he intended for her to retrieve her vehicle from Memphis. Following this testimony, the State rested its case-in-chief, and appellant presented no additional proof.

The jury subsequently found appellant guilty of theft valued at $1,000 or more but less than $10,000. The trial court sentenced appellant as a Range II, multiple offender to seven years in confinement.

## II. Analysis

On appeal, appellant argues that: (1) the evidence was insufficient to support his conviction; (2) the indictment was improperly aggregated into one count and that because of the aggregation, the State should have made an election of facts; (3) the State improperly asked the jury to view the crime from the victim's perspective during closing argument; (4) the State improperly argued facts that were not in the record during closing argument; (5) the cumulative effect of these errors requires a new trial.

### A. Sufficiency of the Evidence

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

-4-

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

A person commits theft of property when "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property that is valued at $1,000 or more but less than $10,000 is a Class D felony. *Id.* § 39-14-105(a)(3). The value of the stolen or damaged property is determined by "[t]he fair market value of the property or service at the time and place of the offense; or . . . [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." *Id.* § 39-11-106(36)(A)(i)-(ii).

Viewed in the light most favorable to the State, there was sufficient evidence to support appellant's conviction. Mrs. Barcomb testified that appellant was with her most of the day prior to the theft, that appellant was standing behind her when she used the PIN number for her debit card at Food Lion, and that appellant was inside her home when she went to sleep on the night of the theft. However, when her husband's early morning call awoke her, Mrs. Barcomb's debit card, car, and numerous miscellaneous items were missing from her home, and appellant was no longer present. Appellant subsequently called and apologized for stealing the car, explaining that he had needed to return to Memphis. Furthermore, $600 had been withdrawn from the Barcombs' joint account at a location in Memphis. The Barcombs only learned the location of their car after appellant's mother, whom the Barcombs knew, called appellant and extracted the information from him. The car was found at an apartment complex at which appellant did not reside. Regarding the total value of the theft, Mrs. Barcomb testified that $1,000-2,000 in miscellaneous items had been stolen from her home, and the State introduced a

list of the items and their values into evidence. In addition, $600 was withdrawn from the Barcombs' bank account, and the Barcomb's 2012 Toyota Camry was purchased for $27,283.99 on the day prior to the theft. While there was evidence presented that the value of the property totaled more than $10,000, it is the province of the jury to determine the value of the stolen or damaged property. *State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981) ("In determining the value of stolen property in larceny cases, the trier of fact is to determine the fair cash market value of the stolen property at the time and place of the theft . . . ."). Therefore, we conclude that after viewing the evidence in the light most favorable to the State, a rational jury could have found beyond a reasonable doubt that appellant committed theft valued at $1,000 or more but less than $10,000. Appellant is without relief as to this issue.

### B. Indictment – Election of Offenses

Appellant argues that there was evidence presented at trial that there were differing intents regarding the car and the other stolen items ― that the car was merely taken for the purpose of returning to Memphis and not taken with the intent of keeping it, whereas the other items were taken with the intent of keeping the items. Appellant argues that because of the possible differing intents, the State erred in aggregating the thefts into a single indictment and because it was one indictment, in failing to elect whether the indictment referred to the car or the other stolen property.

First, regarding whether the State properly aggregated the thefts into a single indictment, Tennessee Code Annotated section 39-14-105(b)(1) states, "In a prosecution for theft of property, . . . the state may charge multiple criminal acts committed against one (1) or more victims as a single count if the criminal acts arise from a common scheme, purpose, intent or enterprise." Furthermore, pursuant to subsection 105(b)(2), "[t]he monetary value of property from multiple criminal acts which are charged in a single count of theft of property shall be aggregated to establish value under this section." This court has stated:

> Where an accused is alleged to have stolen property in separate acts but from the same owner, from the same location, and pursuant to a continuing criminal impulse or a single sustained larcenous scheme, the State is permitted to aggregate the value of the stolen property and prosecute the thefts as a single offense.

*State v. Kathyrn White Byrd*, No. E2002-00417-CCA-R3-CD, 2003 WL 21276499, at *5 (Tenn. Crim. App. May 29, 2003) (citation omitted). We note from our review of the record that appellant's defense was that he did not intend to keep the car, which he claimed would reduce the car theft to joyriding. However, the State proceeded on a theory of theft of all the items and, as stated above, presented sufficient proof of

appellant's intent. As such, the State was justified in aggregating all of the theft allegations into one indictment as was contemplated by Tennessee Code Annotated section 39-14-105(b).

Regarding whether the State was required to make an election of facts, this issue is waived. Appellant failed to argue this issue at trial or in his motion for new trial, which deprived the trial court of ruling on the merits of this argument, and he now raises it for the first time on appeal. Tennessee Rule of Appellate Procedure 36(a) states, "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." As such, appellant has forfeited review of this issue.

### C. Closing Arguments

Appellant also challenges the State's closing arguments on two separate grounds. First, appellant argues that the State violated the "Golden Rule" by inviting the jury to view the crime from the victim's perspective. Second, appellant argues that the State argued facts outside of the record.

"[A]rgument of counsel is a valuable privilege that should not be unduly restricted." *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). Tennessee courts give great latitude to counsel arguing their cases to the jury. *Id.* Thus, "trial judges have wide discretion in controlling the argument of counsel, and their action will not be reviewed absent abuse of that discretion." *Id.* However, the comments of counsel during closing argument "'must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried.'" *State v. James Rae Lewter*, No. M2010-01283-CCA-RM-CD, 2011 WL 1197597, at *4 (Tenn. Crim. App. Mar. 31, 2011) (quoting *State v. Gann*, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007)).

"A criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." *State v. Banks*, 271 S.W.3d 90, 131 (Tenn. 2008) (citing *United States v. Young*, 470 U.S. 1, 11-13 (1985); *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001) (holding that a prosecutor's improper closing argument does not automatically warrant reversal). To establish reversible error and succeed on a claim of prosecutorial misconduct, the appellant must show that "the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." *State v. Farmer*, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996) (citing *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)).

When determining whether the argument affected the jury's verdict, we consider the following five factors:

(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

This court has previously recognized five general areas of prosecutorial misconduct:

1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

*State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (citations omitted).

i. Golden Rule

Appellant argues that the State violated the "Golden Rule" by inviting the jury to view the crime from the victim's perspective. Appellant specifically challenges the following segment of the State's closing argument:

By the way, if when you go out to the parking lot, after you've rendered your verdict, and your car is gone, and a day later you get a call that it's in Memphis, and you have to go get it, and your GPS is missing

from it, I want you to ask yourself: Did he steal my car . . . or is he just joyriding?

The trial court overruled appellant's objection regarding the argument, stating that the argument was not improper.

The golden rule argument has been defined as:

[A]rguments by counsel suggesting to the jurors that they place themselves in the position of a party to the cause, or posing to them the question whether they would go through life in the condition of the injured Plaintiff, or would want members of their family to go through life [physically disabled], are usually improper, and reversibly erroneous.

*Esmail Ashdji and Faizeh Ashdji v. Rodney E. Yardley*, CA No. 1188, 1988 WL 116498, at *2 (Tenn. Ct. App. Nov. 4, 1988) (citation omitted). While the State's closing argument posed a similar factual scenario to that at issue, the scenario was presented in response to appellant's argument that he was only guilty of joyriding. The State asked the jurors to view the facts presented, absent the defendant, and determine from their perspective, whether a theft or mere joyriding had occurred. *See, e.g., State v. Fusco*, 404 S.W.3d 504, 522 (Tenn. Crim. App. 2012) (stating that argument was not improper when State asked the jury to determine that the facts amounted to a specific crime versus asking the jury to focus on the consequences of an acquittal). Considered in light of the circumstances of the case and the intent of the prosecutor, the argument was not so improper or inflammatory as to amount to prosecutorial misconduct. Therefore, the trial court did not abuse its discretion in overruling appellant's objection. Appellant is without relief as to this issue.

### ii. Arguing Facts Outside of the Record

Appellant also argues that the State committed prosecutorial misconduct during closing arguments by stating:

Now Mr. Barcomb testified that he had called [appellant's] mother[] and that he told her that the debit card had disappeared along with the brand new 2012 Camry.

Why do you think [appellant] called to apologize? I would submit to you, ladies and gentlemen, because Mama made him do it. That's why they even got the car back, I would submit. That's why they told them where it was.

Appellant argues that this argument amounted to the State arguing facts outside of the record because there was no testimony that appellant's mother made him call the Barcombs.

As an initial matter, we note that appellant failed to object to this argument at trial. Therefore, we can only review this issue for plain error. The accepted test for plain error review requires that:

(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). To rise to the level of "plain error," an error "'must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)). All five factors must be established by the record before a court will find plain error. *Smith*, 24 S.W.3d at 282. Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record.

Appellant has failed to show that a clear and unequivocal rule of law has been breached. The argument was based on inferences drawn from the evidence presented at trial. Mr. Barcomb testified that he was able to locate his car by calling appellant's mother, whom he knew and who had stayed with Mrs. Barcomb for three to four months while she was ill. Appellant's mother contacted appellant to get the information about the car's location. Later, Mrs. Barcomb received a call from appellant apologizing for taking the car. Therefore, it was reasonable to infer that appellant's mother's call was the impetus for appellant's call to Mrs. Barcomb. Appellant has failed to show that the State committed misconduct and has failed to show that he is entitled to plain error review. Appellant is not entitled to relief.

D. Cumulative Error

Lastly, appellant argues that the cumulative effect of the alleged errors entitle him to a new trial. However, appellant has failed to show that error occurred. *See State v. Herron*, 461 S.W.3d 890, 909-910 (Tenn. 2015) ("To warrant assessment under the

cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings.").  Therefore, we conclude that he is not entitled to a new trial on this basis.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE