IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2016 Session

**STATE OF TENNESSEE v. VANESSA RENEE PINEGAR**

**Appeal from the Circuit Court for Warren County**
**No. F-14256    Larry B. Stanley, Jr., Judge**

_____

**No. M2015-02403-CCA-R3-CD – Filed October 28, 2016**

_____

The defendant, Vanessa Renee Pinegar, was convicted of one count of facilitation of delivering 0.5 or more grams of cocaine within a school zone and two counts of attempted delivery of 0.5 or more grams of cocaine within a school zone. The trial court merged her attempted delivery convictions and imposed an effective sentence of nine years and a fine of $2000. The defendant appeals her convictions, challenging the denial of her motion to sever the trial of the defendants, certain evidentiary rulings, the jury instructions, the sufficiency of the evidence, and her sentence. Upon review, we affirm the convictions and sentences.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J. and ROBERT H. MONTGOMERY, J., joined.

John P. Partin, District Public Defender; Ricky L. Stacy, Assistant Public Defender, for the appellant, Vanessa Renee Pinegar.

Herbert H. Slatery III, Attorney General and Reporter; Andrew Craig Coulam, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; Tim Miner, Assistant District Attorney General, and Justin Walling, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

This case arises from the defendant's involvement in controlled buys conducted by the McMinnville Police Department and Warren County Sheriff's Department on July 29 and July 30, 2013. Along with co-defendant Jimmy Tyrone Wilkerson, also known as

"T.Y.," the defendant was indicated for three counts of delivering 0.5 or more grams of cocaine in a school zone and delivery of drug paraphernalia. The following evidence was presented at trial.

In July of 2013, the McMinnville Police Department began working with confidential informants Kristin Smith and Kristin Flores on several drug transactions. Ms. Flores was on probation and wished to move out-of-state, so in exchange for their services, Detective Tony Jenkins agreed to have Ms. Flores' probation transferred from Tennessee to Indiana. In addition, Ms. Smith was paid for each controlled buy and received approximately $700 for two transactions occurring July 29 and 30, 2013, and additional payments for other unrelated transactions. Ms. Smith testified that she also agreed to be a confidential informant because, in exchange, she hoped the McMinnville Police Department would investigate a reported burglary of her apartment.

On July 29, 2013, Ms. Smith called the defendant's cell phone in an attempt to purchase drugs from Mr. Wilkerson. According to Ms. Smith, the defendant specified her house for the transaction. Once Ms. Smith confirmed Mr. Wilkerson had narcotics available that day, she contacted the investigators to let them know the controlled buy had been scheduled. Ms. Smith and Ms. Flores then met Detective Jenkins and Detective Todd Rowland, both from the McMinnville Police Department, and Investigator Steven Carpenter and Investigator Jody Cavanaugh, both from the Warren County Sheriff's Department, in preparation for the transaction. Investigator Cavanaugh searched the women and placed a transmission device on Ms. Smith that allowed the officers to monitor the transaction. Strip searches were not performed, and Investigator Cavanaugh did not pat down their pelvic areas or check their panty lines. Ms. Smith and Investigator Cavanaugh both admitted at trial that during the controlled buy, Ms. Smith could have hidden drugs her in pelvic area, as it was not checked.

Before the confidential informants left for the defendant's house, Detective Jenkins searched Ms. Smith's vehicle and gave her $300. The investigators then turned on the recording devices. From the car, Ms. Smith called the defendant on her cell phone and asked to speak with Mr. Wilkerson. The defendant handed the phone to Mr. Wilkerson, and Ms. Smith asked him how much "dope" she could get for $300. Mr. Wilkerson told her six grams.

When Ms. Smith and Ms. Flores arrived at the defendant's home, both the defendant and Mr. Wilkerson were present. Mr. Wilkerson took a plastic bag containing crack cocaine from his pocket and, using a spoon, transferred a portion of it into a separate plastic bag for Ms. Smith. Using a digital scale, Mr. Wilkerson weighed the crack cocaine in Ms. Smith's presence to ensure it weighed a full six grams. The

defendant was present for the entire transaction but did not handle the drugs or the money.

During the controlled buy, Detectives Jenkins and Rowland rode in one vehicle, and Investigators Carpenter and Cavanaugh rode in another. Both vehicles were parked in close proximity to the defendant's home, and the officers could hear the entire transaction through the transmitter. The State introduced an audio recording of the transaction and played it for the jury at trial. Detective Jenkins testified that he recognized the language used as language associated with the sale of narcotics and related paraphernalia, and Ms. Smith explained the narcotics-related terms for the jury. Detective Jenkins and Investigator Cavanaugh both testified that, due to prior interactions with him, they recognized Mr. Wilkerson's voice in the transmission. The officers did not know the defendant prior to the controlled buy, but Investigator Cavanaugh testified that due to subsequent encounters with her, at trial he could also identify her voice in the recording.

After the purchase, Ms. Smith and Ms. Flores traveled in Ms. Smith's car to a prearranged location to meet the officers. Ms. Smith gave a bag containing a white rock-like substance to Detective Jenkins, who field tested it and placed it in an evidence bag. Both Ms. Smith and Ms. Flores were searched again, as was Ms. Smith's vehicle.

On June 30, 2013, outside the presence of investigators, Ms. Smith set up another buy with Mr. Wilkerson, this time seven grams of powder cocaine and seven grams of crack cocaine for $650. Ms. Smith again called the defendant's cell phone number and spoke with her to confirm Mr. Wilkerson had the narcotics available for purchase. She then told law enforcement about the scheduled transaction and met with Detective Jenkins, Detective Rowland, Investigator Carpenter, and Investigator Cavanaugh again in preparation for the transaction. Detective Jenkins searched Ms. Smith's car and gave her money. Detective Cavanaugh searched the informants and outfitted Ms. Smith with a recording device. Again, Detective Cavanaugh did not perform strip searches or check their pelvic areas.

The recording device was turned on shortly before the confidential informants left for the defendant's home. Ms. Smith called the defendant when she arrived and learned Mr. Wilkerson was not present. The defendant then called Mr. Wilkerson in Ms. Smith's presence, so only the defendant's end of the conversation could be heard over the audio transmission. At the conclusion of the defendant's conversation with Mr. Wilkerson, she told Ms. Smith that Mr. Wilkerson told her to take $20 off of the amount owed and

purchase "skates."[1]  When questioned by Ms. Smith regarding the directions, the defendant stated, "You go get the skates, I'll go get him, and we will meet back here."

Ms. Smith and Ms. Flores purchased the digital scales as directed and returned to the defendant's home.  The defendant and Mr. Wilkerson were not back yet, so they went inside the unlocked home and waited approximately an hour.  Eventually the defendant and Mr. Wilkerson arrived in separate cars.  Ms. Smith then paid Mr. Wilkerson $650, less the cost of the digital scale, and received a purported seven grams of powder cocaine and seven grams of crack cocaine.  Mr. Wilkerson confirmed the weight of the narcotics using the digital scales purchased by Ms. Smith at the defendant's direction.  The defendant was present for the entire transaction, but again, she did not handle the drugs or the money.

The controlled buy was monitored by the officers, who were able to hear the entire transaction over the transmitter.  Again, Detective Jenkins recognized the use of terms consistent with the sale of narcotics and related paraphernalia.  Detective Jenkins and Investigator Cavanaugh also again recognized Mr. Wilkerson's voice in the transmission.  At trial, Investigator Cavanaugh identified the defendant's voice in the transmission from the July 30, 2013, transaction.

Like before, Detectives Jenkins and Rowland rode together, and Investigators Carpenter and Cavanaugh rode together, with both pairs parking in separate locations in close proximity to the defendant's home.  This time, Investigators Carpenter and Cavanaugh were able to view the defendant's home from their location.  When Ms. Smith left to purchase the digital scales, Investigators Carpenter and Cavanaugh followed her to ensure she did not make any other stops and that she remained safe.  At the conclusion of the controlled buy, Ms. Smith and Ms. Flores met the officers in the same predetermined location.  Detective Jenkins searched Ms. Smith's car, took the narcotics obtained by Ms. Smith, and placed the narcotics in an evidence bag.  Ms. Smith and Ms. Flores were also searched again.

Both controlled buys occurred at the defendant's residence on 118 Warren Street.  Warren Academy, a school attended by children with behavioral issues, was located at the intersection of Spring Street and Warren Street.  Detective Jenkins testified that measuring from the easiest, but not the shortest, route, the property line of the school was 647 feet from the property line of defendant's residence.

Special Agent Lela Jackson with the Tennessee Bureau of Investigation ("T.B.I.") tested the evidence collected following the July 29 and July 30, 2013, controlled buys for

---

[1] At trial, Ms. Smith testified that digital scales used to weigh narcotics are called "skates."

the presence of narcotics. She identified the white rock-like substance purchased on July 29, 2013, as 6.05 grams of cocaine base. She identified the white rock-like substance purchased on July 30, 2013, as 6.72 grams of cocaine base, and the white powder as 7.15 grams of cocaine. The State entered the reports authored by Agent Jackson into evidence.

At trial, the State called Ms. Smith, Detective Jenkins, Agent Jackson, and Investigator Cavanaugh to testify. After the State rested, both defendants moved for acquittal. The trial court reduced defendant's charge of delivery of drug paraphernalia to possession of drug paraphernalia but otherwise denied the motions.

Mr. Wilkerson did not testify, but he did call a series of witnesses. Robert Sharp testified that Ms. Smith had a reputation for being dishonest. Mr. Sharp further testified that Mr. Wilkerson did not go by the name of "T.Y." Instead, Tyrone Ramsey, who also lived in the area, did.

Kayla Simpson, Ms. Smith's ex-girlfriend and the defendant's cousin, also testified that Ms. Smith had a reputation for being dishonest. Angela Whitman, who formerly employed Mr. Wilkerson, testified that Mr. Wilkerson was a truck driver and did a good job. Kenneth Daniel King, Mr. Wilkerson's employer at the time of trial, also testified that Mr. Wilkerson was a truck driver and did a good job. Both Ms. Whitman and Mr. King confirmed that in 2013, there were ample employment opportunities for truck drivers.

Mr. Wilkerson called Linda Wilkerson, his mother, as his last witness. Ms. Wilkerson testified that the Tyrone known as "T.Y." was Tyrone Ramsey, Mr. Wilkerson's cousin, and not Mr. Wilkerson. After Mr. Wilkerson rested, the defendant rested without presenting proof. Kristin Flores was not called as a witness by any of the parties; it was noted during trial that she had absconded from probation and could not be located.

The jury found the defendant guilty of one count of facilitation of delivering 0.5 or more grams of cocaine within a school zone and two counts of attempted delivery of 0.5 or more grams of cocaine within a school zone. The jury found the defendant not guilty of possession of drug paraphernalia. The jury was unable to return a unanimous verdict as to Mr. Wilkerson, so the trial court declared a mistrial. The trial court merged the attempted delivery convictions and, following a sentencing hearing, sentenced the defendant to a concurrent sentence of nine years in confinement. The defendant subsequently moved for a new trial, which the trial court denied. This timely appeal followed.

On appeal, the defendant argues the trial court committed reversible error by: denying her motion to sever the defendants for trial; prohibiting the cross-examination of Ms. Smith regarding the prior bad acts of concealing drugs and taking them into a penal institution; admitting statements made by the male voice alleged to be Mr. Wilkerson as substantive evidence against the defendant; failing to give Tennessee Pattern Jury Instruction 42.1 regarding an absent material witness; and failing to use the criminal responsibility jury instruction presented by the defendant. The defendant contends she is entitled to a new trial due to these cumulative errors. The defendant further asserts the evidence was insufficient to sustain the convictions, and the trial court erred when enhancing the defendant's sentence. In response, the State contends the defendant waived her prior bad act argument by raising it for the first time on appeal; the audio-recordings of the controlled narcotics buys were properly admitted; the trial court did not abuse its discretion when denying the motion to sever; the jury instructions were complete; and the trial court did not err when ordering an effective sentence of nine years. We affirm the judgments of the trial court.

*Analysis*

## I.      Admission of Evidence

### A.      Prior Bad Act of Ms. Smith

On appeal, the defendant first argues the trial court committed reversible error when finding that Ms. Smith's prior act of introducing contraband into a penal institution had no relevance or probative value. According to the defendant, the trial court should have allowed the defendant to cross-examine Ms. Smith about this act pursuant to Rule 608(b) of the Tennessee Rules of Evidence. The defendant further argues the trial court should have allowed the evidence under Rules 401 and 402 because the State opened the door by asking Ms. Smith about the procedures law enforcement took to search her body prior to the controlled buys on July 29 and July 30, 2013. The defendant goes on to argue that the trial court violated her constitutional rights to confrontation, cross-examination, present a defense, and due process by limiting her cross-examination of Ms. Smith. Finally, the defendant submits the trial court committed reversible error in depriving the defendant of an opportunity to make an offer of proof relating to the specific acts of Ms. Smith. The State argues that the defendant raises these issues for the first time on appeal, so they have been waived. We conclude the defendant has waived these issues and is not entitled to plain error relief.

At trial, the State questioned Ms. Smith extensively about the procedure used by law enforcement prior to the controlled buys occurring July 29 and 30, 2013.

Ms. Smith testified that she met the officers at a confidential location prior to the transactions, and the officers extensively searched her body and vehicle. The defendant clarified on cross-examination that the male officers did not perform strip searches or pat down her pelvic area prior to the transactions. During a bench conference, the defendant informed the trial court that she wished to cross-examine Ms. Smith about a prior occasion where she hid narcotics on her body and brought them into a penal institution, stating:

> We're aware that [Ms. Smith] has been previously caught taking drugs into a penal institution. We believe that information is relevant as a prior act that shows she had the opportunity. It's a specific 404(b) purpose that she had the opportunity which includes the necessary skills and ability to conceal drugs on her person and we want to ask her about that. We're not asking about any criminal – we're not asking about a criminal charge. We're asking about a specific act of conduct.
>
> . . .
>
> We're not asking about a charge. We're asking about the specific act of conduct, the actual taking of drugs into a penal institution, not anything about the criminal justice system or what happened or anything as of right now.
>
> . . .
>
> Your honor, we're asking to be able to proceed under opportunity and specifically that other acts admitted to prove the accused had access to necessary equipment, people or location or the necessary skills to carry out the act.

The State objected, and the trial court sustained the objection on the grounds of relevancy. The trial court ruled, however, that the defendant could ask Ms. Smith if she could have concealed drugs on her body had she wanted to do so. The following exchange then occurred:

> Q.  Ms. Smith, you agree that you could have concealed drugs on your person for each of these buys, couldn't you?
>
> A.  Yes, sir.
>
> Q.  And in fact, you've done that before, haven't you?

[STATE'S COUNSEL]:    I object.

THE COURT:    Sustained . . . I made that very clear. Ladies and gentlemen, please disregard that last statement. That was not relevant, not pertinent and don't have any idea whether, in fact, it's true so the last question was, could you have done that if you wanted to? The answer was yes. Please disregard anything after that.

The defendant then requested an offer of proof outside the presence of the jury, and the trial court granted her request. During the offer of proof, Ms. Smith admitted to getting caught bringing drugs into a penal institution. Ms. Smith stated that she subsequently entered into a plea agreement and received judicial diversion. When the defendant asked where on her body the drugs were concealed, the following exchange occurred:

Q.    How did you do that? Where were the drugs concealed?

. . .

THE COURT:    Let's not be overly graphic here. Did you hide them on your person?

A.    Yes, sir.

Q.    And where?

THE COURT:    Well, is that relevant?

[DEFENSE COUNSEL]:    Well, Your Honor, it is because it's possible, she's already testified it's possible, she could have concealed drugs on each of these buys.

THE COURT:    Right. She admitted that.

Q.    Ms. Smith, in the incident in Hickman County, did you conceal the drugs in a place where officers don't normally search?

[STATE'S COUNSEL]:    That's a fascinating question, but I think the Court has already ruled on that issue.

THE COURT: I have. She's admitted that she could have hidden drugs if she wanted to.

[DEFENSE COUNSEL]: That's all I have.

. . .

THE COURT: I'll overrule the request to allow anything about the taking of drugs into the penal institution. I don't think that's relevant or probative because she has answered the question that she could have concealed drugs on her person if she wanted to.

Our review of the record reveals that the defendant attempted to cross-examine Ms. Smith regarding this prior act under Rule 404(b) only. Accordingly, the trial court only considered the propriety of the requested cross-examination under Rule 404(b). In her motion for new trial, the defendant attempted to preserve the issue by stating "[t]he Court committed reversible error in sustaining an objection by the State prohibiting [the defendant] from questioning witness Kristin Smith about a prior specific act of conduct of concealing drugs for the purpose of taking them into a penal institution." This referenced attempt to question Ms. Smith about the prior act, though, was again brought under Rule 404(b) only.

The defendant now appears to abandon her Rule 404(b) argument and instead raises new arguments on appeal, including the admissibility of the act under Rule 608(b) and the alleged violation of her constitutional rights to confrontation, cross-examination, present a defense, and due process. These arguments have been waived. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Turner*, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) ("A party may not raise an issue for the first time in the appellate court."); *State v. Clarence Boiling*, No. E2000-1985-CCA-R3-CD, 2001 WL 839365, at *2 (Tenn. Crim. App. July 25, 2001) (holding that although presentation of extrinsic evidence was error, defendant waived Rule 608(b) issue on appeal because he failed to object on that basis at trial).

Moreover, while the defendant did not request plain error review, in the interest of justice, we have thoroughly reviewed the record and conclude that the trial court's evidentiary ruling made at the conclusion of the defendant's offer of proof does not rise

to the level of "plain error."  *Id.* ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."); *State v. Hatcher,* 310 S.W.3d 788, 808 (Tenn. 2010) (stating that a defendant waives those issues not raised in a motion for new trial and referring to the discretionary consideration of those issues as "plain error" review); *see also State v. Ricky E. Scoville,* No. M2006–01684–CCA–R3–CD, 2007 WL 2600540, at *2 (Tenn. Crim. App. Sept.11, 2007) ("[R]arely will plain error review extend to an evidentiary issue.").

> In discussing "plain error" review, the Tennessee Supreme Court has held:
>
> This Court will not grant relief under plain error review unless five criteria are met: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it probably changed the outcome of the trial. If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. The party claiming plain error has the burden of persuading the appellate court.

*Hatcher,* 310 S.W.3d at 808 (citations and internal quotation marks omitted).  Therefore, circumstances requiring plain error relief are rare and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson,* 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994).  To warrant reversal, "'plain error must be of such a great magnitude that it probably changed the outcome of the trial.'" *Id.* (quoting *United States v. Kerley,* 838 F.2d 932, 937 (7th Cir.1988)).

Based on the record as a whole, we cannot conclude that the trial court's denial of the defendant's request to cross-examine Ms. Smith regarding her prior attempt to bring hidden narcotics into a penal institution undermined the judicial process, affected the outcome at trial, or involved a "substantial right." *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). We note that "[d]ecisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion.  Thus, reviewing courts will not disturb these decisions on appeal unless the trial court has abused its discretion." *State v. Banks,* 271 S.W.3d 90,

116 (Tenn. 2008) (citing *State v. Robinson,* 146 S.W.3d 469, 490 (Tenn. 2004)). Moreover, "an evidentiary ruling ordinarily does not rise to the level of a constitutional violation." *State v. Powers,* 101 S.W.3d 383, 397 (Tenn. 2003) (citing *Crane v. Kentucky,* 476 U.S. 683, 689 (1986)).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with that character trait. Tenn. R. Evid. 404(b). Generally, Rule 404(b) is a rule of exclusion, but certain exceptions may occur when otherwise inadmissible evidence is offered for another purpose, such as to establish identity, motive, common scheme or plan, intent, or absence of mistake. *State v. Tolliver*, 117 S.W.3d 216, 230 (Tenn. 2003). To admit such evidence, Rule 404(b) specifies the following:

(1)     The court upon request must hold a hearing outside the jury's presence;
(2)     The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
(3)     The court must find proof of the other crime, wrong, or act to be clear and convincing; and
(4)     The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

The trial court properly held a hearing outside the presence of the jury at the request of the defendant. While the defendant now contends the trial court effectively denied her request by interrupting her offer of proof and preventing the witness from stating where she hid drugs on her body when attempting to bring them into a penal institution, the substance of the evidence was apparent from the context of the testimony offered by Ms. Smith during the offer of proof and shortly before.[2] After considering Ms.

---

[2] An offer of proof serves two primary purposes: (1) informing the trial court about the proof the party is seeking to offer; and (2) creating a record so that an appellate court can review the trial court's decision. *State v. Torres*, 82 S.W.3d 236, 258 (Tenn. 2002). We found the context of Ms. Smith's testimony apparent despite the trial court's refusal to allow testimony as to where on Ms. Smith's body the narcotics were hidden and agree the proffered evidence was irrelevant. It would have been better practice, however, for the trial court to allow Ms. Smith to answer all questions posed, as "[a] trial court commits error by refusing a request to make an offer of proof unless 'it is obvious from the record that the proffered evidence could, under no circumstances, be relevant to the issues.'" *Taylor v. State*, 443 S.W.3d 80, 84 (Tenn. 2014) (citing *Alley v. State*, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994)).

Smith's testimony, the trial court ruled her prior attempt to bring narcotics into a penal institution had "no probative value" and was not relevant, so it denied the defendant's request to cross-examine the witness on the subject. Again, the admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with that discretion absent a clear showing of abuse of discretion. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). It was within the province of the trial court to exclude this testimony.

Moreover, given the totality of the evidence presented at trial, the alleged errors related to the trial court's exclusion of evidence regarding Ms. Smith's attempt to bring concealed narcotics into a penal institution was not so significant that it more probably than not changed the outcome of the trial. The trial court allowed the defendant to question Ms. Smith as to whether she could have hidden drugs on her body prior to the July 29 and July 30, 2013 controlled buys, and she agreed it would have been possible. In addition, Inspector Cavanaugh testified that Ms. Smith could have hidden narcotics in her pelvic area during the controlled buys because that area was not searched prior to the transactions. The defendant is not entitled to plain error review of any issues raised before the trial court or on appeal related to the trial court's denial of her request to cross-examine Ms. Smith about her attempt to bring concealed narcotics into a penal intuition. The defendant is not entitled to relief on these issues.

## B.      Admissibility of Audio Recordings of Male Voice

The defendant next challenges the trial court's admissions of audio recordings allegedly made by her co-defendant, Mr. Wilkerson, arguing the statements are testimonial, were offered for the truth of the matter asserted, and did not fit into a hearsay exception. According to the defendant, the trial court did not follow proper procedure or make sufficient findings prior to admitting the statements into evidence against the defendant. In order for the statements to be admissible as a statement of a co-conspirator during the course of and in furtherance of a conspiracy, the defendant argues that *State v. Stamper*, 863 S.W.2d 404, 406 (Tenn. 1993) required the trial court to first determine, by a preponderance of the evidence, whether there was a conspiracy. According to the defendant, the trial court's failure to do this constitutes clear error.

The defendant further argues the audio recording of the statements allegedly made by Mr. Wilkerson during the controlled buy were also not properly admitted as admissions against interest of an unavailable declarant. According to the defendant, in order for this exception to apply, Mr. Wilkerson first needed to be called as a witness and refuse to testify. The trial court did not follow this procedure. Instead, it ruled the statements were not testimonial, put the situation into context, did not identify the

defendant by name, and were admissions against Mr. Wilkerson's interest. According to the defendant, this was plain error. We disagree.

Our Supreme Court has recently announced the following standard of review with regard to hearsay:

> The standard of review for rulings on hearsay evidence has multiple layers. Initially, the trial court must determine whether the statement is hearsay. If the statement is hearsay, the trial court must then determine whether the hearsay statement fits within one of the exceptions. To answer these questions, the trial court may need to receive evidence and hear testimony. When the trial court makes factual findings and credibility determinations in the course of ruling on an evidentiary motion, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. Once the trial court has made its factual findings, the next questions – whether the facts prove that the statement (1) was hearsay and (2) fits under one of the exceptions to the hearsay rule – are questions of law subject to de novo review.

*Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015) (internal citations omitted), *cert. denied*, 2015 WL 5032354 (U.S. Oct. 13, 2015). Whether the admission of a hearsay statement violated a defendant's confrontation rights is a question of law, subject to de novo review. *State v. Davis*, 466 S.W.3d 49, 68 (Tenn. 2015) (citing *State v. Lewis*, 235 S.W.3d 136, 141-42 (Tenn. 2007)).

By arguing the trial court did not first find Mr. Wilkerson to be an unavailable witness before allowing his alleged statements into evidence, the defendant essentially argues the statements violated the Confrontation Clause. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Similarly, the Tennessee Constitution also guarantees the right of confrontation, providing "[t]hat in all criminal prosecutions, the accused hath the right to . . . meet the witnesses face to face[.]" Tenn. Const. art. I, § 9. Although the language of the federal and state constitutional provisions differs slightly, the Tennessee Supreme Court has "traditionally adopted and applied the standards enunciated by the United States Supreme Court" when determining an accused's right to confrontation under the Tennessee Constitution. *State v. Cannon*, 254 S.W.3d 287, 301 (Tenn. 2008).

The United States Supreme Court has interpreted the Confrontation Clause to bar admission of certain out-of-court statements unless: (1) the witness was unavailable to

testify; and (2) the defendant had been given a previous opportunity to cross-examine the witness. *Crawford v. Washington,* 541 U.S. 35, 53-54 (2004). This bar applies only to statements defined by law as testimonial hearsay. *Id.; see also State v. George Anthony Bell,* No. M2008–01187–CCA–R3–CD, 2009 WL 3925370, at *5 (Tenn. Crim. App. Nov. 19, 2009). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). A testimonial statement "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact'" and includes "statements that were made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52.

The Confrontation Clause does not affect the admissibility of statements that do not fall within this traditional definition of hearsay. *United State v. Maher,* 454 F.3d 13, 20 (1st Cir.2006). Therefore, regardless of whether the statement is testimonial or non-testimonial, the Confrontation Clause does not bar statements lacking assertive content, such as commands or questions. *State v. Bobby Lewis Smith*, M2010-02077-CCA-R3-CD, 2012 WL 3776679, at * 2 (Tenn. Crim. App. Aug. 21, 2012). Moreover, even if a statement contains assertive content, the Confrontation Clause does not bar its admission if the statement is not offered for the truth of the matter asserted. *Id.* (internal citations omitted); *see also State v. Price*, 46 S.W.3d 785, 804 (Tenn. Crim. App. 2000).

In *State v. Price*, the State offered recorded conversations between a defendant and a non-testifying co-defendant into evidence at trial. *Id.* at 804. On appeal, the defendant argued that the trial court should have severed his trial from the trial of the non-testifying co-defendant because the recorded statements were hearsay and violated the defendant's rights under the Confrontation Clause. *Id.* When ruling the statements were not hearsay, and their use at trial did not violate the Confrontation Clause, this Court stated:

> At trial, [the co-defendant's] statements on the tape recordings were not offered by the state to prove the truth of the matters asserted. Rather, they were offered solely for the purpose of providing the context of the defendant's statements. If [the co-defendant's] comments had been redacted from the tapes, the defendant's statements would have made little sense. [The co-defendant's] statements were not intended to be substantive evidence. They are not hearsay and their admission did not implicate the defendant's right of confrontation.

*Price*, 46 S.W.3d at 804.

- 14 -

This Court has previously held that the introduction of an audio recording of a controlled buy between a defendant and a non-testifying confidential informant does not violate the Confrontation Clause because the recording is not offered to prove the truth of the matter asserted. *Bobby Lewis Smith*, 2012 WL 3776679 at * 4. Instead, the recording is typically introduced by the State to prove that the informant and the defendant had a conversation regarding the sale of narcotics. *Id.* This Court has found this to be true even when the statement includes the price of the narcotics purchased by the informant. *See George Anthony Bell,* No. 2009 WL 3925370 at *7 ("The general characteristics of cocaine [and] the price of the crack-cocaine . . . are not relevant to whether the [d]efendant sold drugs," so the court found the statements were not introduced to prove the assertions; rather, "the State introduced the statements to prove that the informant and the [d]efendant had a conversation that concerned cocaine and its price."). We reach the same conclusion here even though the statements the defendant sought to exclude were of the non-testifying co-defendant, Mr. Wilkerson, and not the confidential informant.

Our analysis of whether the Confrontation Clause bars the statements at issue involves several inquiries: (a) whether the statements contain assertions; (b) whether the statements are testimonial; and (c) whether the statements are offered for the truth of the matter they assert. *Id.* A statement has been defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." Tenn. R. Evid. 801(a).

While the defendant sought to exclude all oral comments made by Mr. Wilkerson on the audio recordings of the controlled buy, the only statement specifically referenced on appeal is "[s]ix grams." Mr. Wilkerson allegedly said this to Ms. Smith when she asked, "What are you doing for three?" While the statement is an assertion, it is not testimonial and was not offered into evidence by the State to prove the truth of the matter asserted. Instead, this statement and the other comments purportedly made by Mr. Wilkerson were introduced by the State to prove Ms. Smith and Mr. Wilkerson had a conversation facilitated by the defendant about the purchase of cocaine, and after having these conversations, Ms. Smith gave Mr. Wilkerson the money and left the defendant's home with cocaine. These statements were not hearsay, so their introduction did not violate the Confrontation Clause.

Moreover, the statements purportedly made by Mr. Wilkerson gave context to the statements made by the defendant and Ms. Smith, which were also admissible statements. Again, not only were the statements not offered to prove the truth of the matter asserted, but all of the defendant's statements were admissible as admissions by a party-opponent, which pursuant to Rule 801(c), are not hearsay. The statements made by the confidential informants contained in the audio recordings of the controlled buys also provide context for the defendant's statements. The trial court properly admitted the audio recordings of

- 15 -

the controlled buys occurring July 29 and July 30, 2013.  The defendant is not entitled to relief on this issue.

Because we find these statements were not hearsay, it is not necessary to address the applicability of the co-conspirator exception to the hearsay rule.  Moreover, the trial court did not rely on this exception when admitting the audio recording at trial, and the parties did not raise it before the trial court.  This issue has been waived.

## II.    Trial Severance

Prior to trial and repeatedly throughout the trial, the defendant moved for severance of the defendant's cases pursuant to Rule 14(c)(2) of the Tennessee Rules of Criminal Procedure.  The trial court denied the motion because "[t]here is no evidence of any *Bruton* issue which might arise in this trial nor is there an issue that there is any evidence in this case that would be admissible at a joint trial that would not be admissible against Defendant Pinegar were . . . her case tried separately."  On appeal, the defendant argues she was clearly prejudiced by this ruling because the trial court admitted the audio recorded statements of Mr. Wilkerson into evidence, and its only basis for doing so was that Mr. Wilkerson was a party, so the statements were admissible as a party admission.  According to the defendant, had there been separate trials, the trial court would have been better able to evaluate the admissibility of the evidence against the individual defendants.  The State argues the trial court did not abuse its discretion in refusing to sever the defendant's and Mr. Wilkerson's cases for trial because Mr. Wilkerson's portion of the audio recorded controlled buy would have come into evidence regardless of whether the defendant was tried with Mr. Wilkerson.  We agree with the State.

The decision to grant or deny a motion for severance of defendants rests solely within the sound discretion of the trial court.  *Price*, 46 S.W.3d at 802.  This Court will not disturb the trial court's ruling absent clear abuse of discretion.  *Id.*  Tennessee Rule of Criminal Procedure 14 governs when severance of defendants is appropriate and provides, in pertinent part, as follows:

(c) Severance of Defendants.

(1)    *Because of Out-of-Court Statement.* If a defendant moves for a severance because an out-of-court statement of a co-defendant makes reference to the defendant but is not admissible against the defendant, the court shall determine whether the state intends to offer the statement in evidence at trial.  If so, the court shall require the prosecuting attorney to elect one of the following courses:

(A) a joint trial at which the statement is not admitted into evidence or at which, if admitted, the statement would not constitute error; or

(B) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted and if the redacted confession will not prejudice the moving defendant; or

(C) severance of the moving defendant.

(2) *Because of Speedy Trial or Fair Determination Concerns.* The court, on motion of the State or on motion of the defendant other than under subdivision (c)(1), shall grant a severance of defendants if:

(A) before trial, the court finds a severance necessary to protect a defendant's right to a speedy trial or appropriate to promote a fair determination of the guilt or innocence of one or more defendants; or

(B) during trial, with consent of the defendant to be severed, the court finds a severance necessary to achieve a fair determination of the guilt or innocence of one or more defendants.

Tenn. R. Crim. P. 14 (c). Where the trial court has denied a motion for severance of defendants, "the test to be applied by this court in determining whether the trial court abused its discretion, is whether the defendant was clearly prejudiced in his defense as a result of being tried with his co-defendant." *Price*, 46 S.W.3d at 803. "This Court will not find an abuse of the trial court's discretion unless the record clearly shows that the defendant was so prejudiced by the joint trial that the granting of the severance became a judicial duty." *Burton*, 751 S.W.2d at 447.

We have already concluded that the challenged statements of Mr. Wilkerson were not hearsay, rather they provided context for the defendant's recorded interactions with the confidential informants. The entire audio recordings of the controlled buys occurring July 29 and July 30, 2013, were admissible against the defendant regardless of whether the defendant's case had been severed from Mr. Wilkerson's. We affirm the trial court's denial of the defendant's motion to sever. The defendant is not entitled to relief on this issue.

## III. Jury Instructions

On appeal, the defendant further argues the trial court failed to give proper jury instructions. Specifically, she asserts that the trial court should have included Tennessee

Pattern Jury Instruction 42.16 regarding an absent material witness due to the State's failure to call Ms. Flores as a witness at trial. The defendant further argues the trial court should have included specific language from *State v. Dellinger*, 79 S.W.3d 458, 493 (Tenn. 2002) with its instruction on criminal responsibility. Again, we disagree.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)). An instruction will only be considered prejudicially erroneous if it fails to submit the legal issues fairly or misleads the jury as to the applicable law. *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (citing *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998)).

### A.     Absent Material Witness Instruction

Tennessee Pattern Jury Instruction 42.16 regarding am absent material witness states:

> When it is within the power of the state or the defendant to produce a witness who possess peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is available fails to call such witness, an inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness. Whether there was such a witness and whether such an inference has arisen is for you to decide and if so, you are to determine what weight it shall be given.
>
> [This inference does not apply to the defendant because *[he][she]* has a lawful right not to testify and *[his][her]* failure to testify cannot be considered for any purpose against *[him][her]*, nor can any inference be drawn from such fact.]

7 Tenn. Prac. Pattern Jury Instr. TPI – Crim. 42.16 (footnotes omitted). This jury instruction summarizes the missing witness rule, and before it may be invoked, the party requesting the instruction must show: (1) the witness had knowledge of material facts; (2) a relationship exists between the witness and the party that would naturally include the

- 18 -

witness to favor the party; and (3) the missing witness was available to the process of the court for trial. *State v. Bigbee*, 885 S.W.2d 797, 804 (Tenn. 1994). To justify a missing witness instruction, "the witness who was not called must have not been equally available to both parties." *State v. Boyd*, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992). The instruction is inapplicable, "'where the only object of calling such witness would be to produce corroborative, cumulative, or possibly unnecessary evidence[.]'" *State v. Johnny Owens*, No. W2001-01397-CCA-R3-CD, 2002 WL 31624774, at *15 (quoting *Dickey v. McCord*, 63 S.W.3d 714, 721 (Tenn. Ct. App. 2001)).

At trial, the defendant requested the missing witness jury instruction because the State did not call Ms. Flores as a witness. The proof at trial revealed that Ms. Flores relocated to Indiana after getting her probation transferred but had since absconded and could not be located. For that reason, neither party had the ability to subpoena Ms. Flores to testify at trial. Additionally, any testimony offered by Ms. Flores would have been duplicative of that rendered by Ms. Smith. Ms. Smith served as the primary confidential informant and took the lead in the controlled buys. Ms. Flores had no independent role in the transactions. For these reasons, the missing witness instruction was inapplicable, and the trial court did not err in declining to give it.

### B. Criminal Responsibility Instruction

With respect to criminal responsibility, the trial court instructed the jury as follows:

> The defendants are criminally responsible as a party to all offenses charged if the offense[s] were committed by the defendants' own conduct, the conduct of another for which the defendants are criminally responsible, or by both. Each party to the offense may be charged with the commission of the offense. The defendants are criminally responsible for an offense committed by the conduct of another if, acting with the culpability required for the offense, the defendant or defendants caused or aid[ed] an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense. The defendants are criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.

> The defendants are criminally responsible for an offense committed by the conduct of another if, having a duty imposed by law or voluntarily undertaken to prevent the commission of the offense in acting with intent to

benefit in the proceeds or results of the offense, or to promote or assist its commission, the defendants fail to make a reasonable effort to prevent the commission of the offense.

A defendant who is criminally responsible for an offense may be found guilty not only of that offense, but also for any other offense or offenses committed by another, if you find beyond a reasonable doubt that the other offense or offenses committed were natural and probable consequences of the original offense for which the defendant is found criminally responsible, and that the elements of the other offense or offenses that accompanied the original offense have been proven beyond a reasonable doubt.

In deciding the criminal responsibility of the defendants, the jury may also take into consideration any evidence offered that the defendants attempted to thwart or withdraw from any of the offenses that followed from the original offense.

Before you find the defendants guilty of being criminally responsible for said offenses committed by the conduct of another, you must find that all the essential elements of the said offense had been proven by the State beyond a reasonable doubt.

This instruction was almost identical to the instruction found in the Tennessee Pattern Jury Instructions. *See* T.P.I. – Crim. 3.01 (19th ed. 2015). This Court has previously described pattern instruction 3.01 as "a correct statement of the law." *State v. Mario Green*, No. W2006-01383-CCA-R3-CD, 2008 WL 2331020, at*7 (Tenn. Crim. App. June 5, 2008). The trial court did not err when denying the defendant's request for a different instruction. The defendant is not entitled to relief on this issue.

## IV.     Cumulative Error

The defendant argues she was denied a fair trial because of an accumulation of errors by the trial court. We discern no error by the trial court, so the defendant's argument is without merit.

## V.     Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence, arguing that without the inadmissible statements of Mr. Wilkerson, the evidence was insufficient to support her

convictions. The State contends the evidence was sufficient to support all convictions. We agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State,* 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245

S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). The extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Id.* This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

### A.      Count 1– Facilitation to Deliver a Schedule II Controlled Substance, Cocaine, within a School Zone

In Count 1, the defendant was indicted for delivering 0.5 or more grams of cocaine within a school zone on July 29, 2013. Following trial, the jury found her guilty of facilitating the charged felony. Pursuant to Tennessee Code Annotated section 39-17-417, it is a Class B felony for a defendant to knowingly deliver cocaine in an amount of 0.5 grams or more. Tenn. Code Ann. § 39-17-417(a). If the delivery occurs within 1000 feet of the real property of a school, the offense is punished one classification higher. Tenn. Code Ann. § 39-17-432(b)(1). "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403. "The facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged." Tenn. Code Ann. § 39-11-403.

With respect to the controlled buy occurring July 29, 2013, the proof at trial showed that Ms. Smith called the defendant in order to arrange the purchase of crack cocaine from Mr. Wilkerson. The defendant selected her own residence as the location for the transaction. Ms. Smith called the defendant again on her way to the defendant's home in order to speak with Mr. Wilkerson regarding the purchase. The defendant was then present for the entire transaction. Ms. Smith entered the defendant's home with $300 given to her by the McMinnville Police Department and left with a white rock-like substance. Ms. Smith gave the white rock-like substance to Detective Jenkins, who field tested it and placed it in an evidence bag. Agent Jackson with the T.B.I. tested the substance and confirmed it to be 6.05 grams of cocaine base. Detective Jenkins measured the distance from the property line of the defendant's home to the property line of the nearby school and determined they were 647 feet apart.

While the defendant generally argues all statements made by the male voice on the audio recordings of the controlled buys should have been redacted prior to playing the

recordings for the jury, the only specifically challenged statement is Mr. Wilkerson's answer of "six grams" in response to Ms. Smith's inquiry into the amount of cocaine she could obtain for $300. We have already held that this statement was admissible. Moreover, even without it, when reviewing the evidence in a light most favorable to the State, the proof presented at trial was sufficient for a rational trier of fact to find the essential elements of facilitation to delivering 0.5 or more grams of cocaine within a school zone. The defendant is not entitled to relief on this issue.

**B.     Counts 2 and 3 – Attempted Delivery of a Schedule II Controlled Substance, Cocaine, within a School Zone**

In Counts 2 and 3, the defendant was indicated for two counts of delivering 0.5 or more grams of cocaine within a school zone on July 30, 2013. The defendant was then convicted of the lesser-included offense of attempted delivery. These counts were merged because they arose out of the same transaction.

Tennessee Code Annotated section 39-12-101 defines criminal attempt as follows:

(a)     A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1)     Intentionally engages in an action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2)     Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3)     Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense;

Tenn. Code Ann. § 39-12-101(a). Unless the offense attempted as a Class C misdemeanor, criminal attempt is an offense one classification lower than the most serious crime attempted. Tenn. Code Ann. § 39-12-107(a).

With respect to the controlled buy occurring on July 30, 2013, the proof at trial showed that Ms. Smith again called the defendant in order to arrange the purchase from Mr. Wilkerson. The transaction was again to take place at the defendant's home less than

1000 feet from a school. On her way to the defendant's home, Ms. Smith called the defendant to confirm the transaction and learned Mr. Wilkerson was not present. The defendant then called Mr. Wilkerson in Ms. Smith's presence, where only the defendant's side of the conversation could be heard on the audio transmission. The defendant informed Ms. Smith that Mr. Wilkerson wanted her to take $20 off the total amount owed and purchase a digital scale to use as part of the transaction. When questioned about the directions, the defendant stated, "You go get the skates, I'll go get him, and we will meet back here."

Ms. Smith and Ms. Flores purchased the digital scale and returned to the defendant's residence to wait on Mr. Wilkerson's arrival. The defendant and Mr. Wilkerson then arrived at the same time. Mr. Wilkerson used the digital scale purchased by Ms. Smith to weigh the cocaine being purchased.

Ms. Smith entered the defendant's home with $650 given to her by the McMinnville Police Department and left with approximately seven grams of crack cocaine and seven grams of powder cocaine. Ms. Smith brought the narcotics to Detective Jenkins, who placed them in an evidence bag. Agent Jackson with the T.B.I. identified the narcotics as 6.72 grams of cocaine base and the white powder as 7.15 grams of cocaine.

The defendant argues she did not touch the narcotics or the money, so the proof was insufficient to support her conviction. We respectfully disagree. When reviewing the evidence in a light most favorable to the State, the proof presented at trial was sufficient for a rational trier of fact to find, beyond a reasonable doubt, the essential elements of attempted delivery of cocaine in an amount of 0.5 or more grams within a school zone. The defendant brought Mr. Wilkerson to her home so that he could sell cocaine to Ms. Smith, and the defendant relayed messages from Mr. Wilkerson to Ms. Smith regarding the transaction. The defendant was then present for the entire transaction. The jury determines the credibility of witnesses and the weight afforded to the evidence. On appeal, this Court does not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Even though the proof at trial indicated the defendant did not touch the narcotics or money, overall, the evidence presented was sufficient to sustain the defendant's convictions. The defendant is not entitled to relief on this issue.

## VI.    Sentencing

Finally, the defendant contends the trial court erred by enhancing her sentence from the minimum sentence of eight years to nine years. According to the defendant, she

did not have a significant criminal history, so her sentence should not have been increased over the minimum. Again, we respectfully disagree.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise,* 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707.

Under the 2005 amendments to the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1)     The evidence, if any, received at the trial and the sentencing hearing;
(2)     The presentence report;
(3)     The principles of sentencing and arguments as to sentencing alternatives;
(4)     The nature and characteristics of the criminal conduct involved;
(5)     Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6)     Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7)     Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b). Enhancement factors to be considered by the trial court include, but are not limited to, whether "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise,* 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise,* 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In the instant case, the defendant was convicted of Class B felonies and sentenced as a Range I standard offender.  The applicable statutory sentencing range is eight to twelve years.  *See* Tenn. Code Ann. § 40-35-112(a)(2).  Following a sentencing hearing, the trial court imposed an effective sentence of nine years to be served in the state penitentiary, with a mandatory eight years in confinement due to the defendant's convictions for drug offenses occurring in a drug-free zone.  *See* Tenn. Code Ann. § 39-17-432(c) ("Notwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence.").

Based on our review of the record, the trial court imposed this sentence after properly considering the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, and the evidence of enhancing and mitigating factors.  The trial court noted that the defendant had prior criminal convictions for driving on a suspended license and misdemeanor theft of property.  The trial court further found that while the defendant was not the leader, she was a willing participant and played a significant role in the commission of the crimes.  Based on these conclusions, the trial court imposed its sentence.

Within-range sentences are presumed reasonable.  Even in the absence of enhancement factors, the defendant is not entitled to the minimum sentence.  Rather, the trial court may set a sentence anywhere within the applicable range so long as the sentence is consistent with the purposes and principles of the Sentencing Act.  *See State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (there is no presumptive sentence).  We conclude the trial court did not abuse its discretion when sentencing the defendant, a Range I offender, to nine years in confinement, and affirm the sentence.

### *Conclusion*

Based upon the foregoing analysis, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE